ORIG TO Court.

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JIM LATTANZIO, INDIVIDUALLY & GALEN INSTITUTE LLC, ACTING BY JIM LATTANZIO, ITS SOLE MEMBER PLAINTIFFS<br><br>vs.<br><br>COMMISSION ON MASSAGE THERAPY ACCREDITATION (COMTA), ET AL DEFENDANTS | CASE NO. 3:02CV1232 (PCD)<br><br>PLAINTIFFS OBJECTION TO DEFENDANTS MOTION TO VACATE JUDGMENT AND SET ASIDE DEFAULT<br><br>February 20, 2004 |

Now comes the plaintiff, Jim Lattanzio with an objection to the defendant's motion to vacate Judgment and set aside Default, dated February 09, 2004. As grounds thereof the plaintiff states and submits the following as <u>facts</u>, <u>argument</u>, <u>memorandum</u> and <u>exhibit</u> that:

On Friday, February 06, counsel for the defendants somehow filed what amounts to be an 11th hour motion to vacate a judgment and set aside a default. Because of this action, this plaintiff was then notified on Friday the 6th at around 4:30 pm that the hearing in damages that was scheduled for Monday February 09 at 11:00am was now postponed. As reasons for the defendants motion and why the Court should grant said motion the defendants stated:

I. <u>Defendants have represented to this Court</u>:

1. That on October 31, 2003 defense counsel received notice from this Court granting plaintiffs a motion for default for failure to disclose, which they now claim not to have been served with an original copy of;

2. That on November 3, 2003 defense counsel filed a motion to open the default, which this Court denied for failure to follow this Courts supplemental order;

3. That on November 21, 2003 defense counsel mailed to the plaintiffs a new motion to open the default then filed an original certificate of service with this Court, pursuant to the supplemental order and did then receive on December 12, 2003 an objection to their motion to open the default from the plaintiff Lattanzio;

4. That based upon the status of the filings as to the motion to open the default, the procedures had been followed (to the belief of the defendant) and the motion to open the default is pending before this Court;

5. That on February 6, 2004, for the first time the supplemental orders had a second page, which they did not have;

6. That on January 30, 2004 defense counsel received notice dated January 28, from this Court granting the plaintiff's motion for judgment upon the default, which was first notice counsel had received that plaintiff had filed such a motion and as with the motion for default, plaintiff did not send or serve said motion on defense counsel;

7. That defense counsel notes that said motion for judgment was granted "absent opposition,' and would have filed an opposition had they known, because they have a meritorious defense;

8. That this Court should accept defense motion to set aside judgment and open the default, at this the 11 hour, for "good cause shown" and further represents that;

   a. The Courts order dated January 28, received January 30, scheduling the hearing in damages for February 9, left them no time to follow all the parameters in the supplemental orders;

2

    b. Attorney Vehslege "took over" the case in mid December, suffered a hand injury early in the morning of January 30, spent all day in an emergency room and with a hand surgeon the morning of February 2 and therefore became aware of the "judgment and hearing in damages," until the afternoon of February 2.;

    c. Attorney Vehslage spoke with Attorney Amato, who objected to any new motions;

    d. Attorney Vehslage has left two messages with Mr. Lattanzio, which went unanswered as of the filing of defendant's motion on February 9;

9. That the above are truthful and accurate representations and that said representations constitute <u>just causes</u> under supplemental order, paragraph 1, (m) for this Court to accept their February motion and justly grant said motion.

II. <u>Plaintiff Lattanzio represents to this Court</u>:

1. Attorney Vehslage (law firm partner) filed an Appearance, along with Attorney Curtin on August 27, 2002 and as such is fully accountable and responsible for this matter as counsel for the defendants and his mid Dec. "case take over," is misleading;

2. That on July 18, 2002 pursuant to F.R.C.P. 4(d) "waiver of summons" this plaintiff did deliver to defendants, COMTA and Carole Ostendorf each, 1. An original Court stamped waiver, summons and complaint, and attached to each, 2. An original copy, provided by the Clerk of the Court, of the "Notice to counsel and pro se parties" package for cases being heard by Judge Dorsey, which included the disclosure statement and supplemental orders;

3. That after the defendants failed to respond or "waive" service and therefore this plaintiff had to travel to the New Haven Court house, in August, have new

3

summons's, complaints stamped and another set of notices were attached, and then served upon the defendants, which they then did answer;

4. That upon the request of Attorney Curtin in August of 2003, staff at the Galen institute did fax another complete set of the notice package to Mr. Curtin, which now makes a total of <u>FIVE</u> sets of notices, which all have include the supplemental orders at question. (How could they not have received one reverse side page?);

5. That on October 31, 2003 when defense counsel received notice <u>from this Court</u> granting plaintiffs motion for default for failure to disclose, dated October 28, 2003 it was clearly printed in the left margin, that "<u>Plaintiff shall within 30 days move for judgment on the default (F.R.C.P. 55(b), failing which the case will be dismissed for failure to prosecute. F.R.C.P. 41</u>." SO ORDERED and therefore the defendants were clearly on notice that within 30 days of October 28 a motion for judgment could be forthcoming or the case would be dismissed. (What other interpretation could be made by that ruling and order?);

6. That when the defendants first motion to open dated November 3 was denied for failure to follow supplemental orders they should have become aware that something was wrong with their filing practices;

7. In fact, this was not the first time the defendants were notified that they did not comply with the supplemental order, that in October, 2002 their objection to this plaintiffs motion for costs and return of property was returned to them for "failure to comply with supplemental orders, (motion order # 12, 13);

8. This plaintiff submits to this Court that if one reads just the first side of the supplemental order and stops at paragraph 4, no one could conclude that this was

4

the entire procedure, or something does not make logical sense because it STOPS with the "moving" counsel being in possession of an original opposition and NO motion or objection before the Court;

9. That this plaintiff on December 12, 2003 did deliver to the defendants an original objection, signed in blue ink, and original notarized affidavit, which was also marked at the top right "original for Court," which defendants admit receiving, a copy of objection is attached as Exhibit 1, and plaintiff respectfully prays and asks this Court to read and consider it, as the plaintiff believes it is the primary reason that the defendants did not submit it to this Court;

10. With respect to defendants second, November 21, 2003 motion to open, defendants do admit it was mailed to plaintiffs and that they certified by statement said mailing to this Court per supplemental order, and that they believed it was pending before this Court. However again a clear reading of paragraph 4 of the supplemental orders would place the original objection in defendant's hands and not before the Court;

11. The defendants admit that on February 2, 2004 they received Court notice of the judgment on the default and notice of hearing scheduled for, Monday February 9 at 11am;

12. The defendants then state in said February 9 motion 10 (c) and (d) that they then contacted Attorney Amato and attempted to contact plaintiff Lattanzio, giving the illusion that they acted immediately;

13. What the defendants omitted from paragraph 10 (c) in their February 9 motion is that they waited until February 5 late afternoon, around 3pm to contact only Attorney

5

Amato and only asked Mr. Amato if he objected to defendants filing a motion to open, which Mr. Amato obviously objected to;

14. What the defendants omitted from paragraph 10 (d) in their February 9 motion is that they <u>waited</u> until February 6 to contact plaintiff Lattanzio, which due to the severe winter ice storm and closed his school, Galen Institute and was not there;

15. The defendants were notified on January 30, like the plaintiffs, then they admit, they became aware of the notice on February 2, however they wait until February 5 to take <u>any action</u> what so ever, and that action was a request to file a motion to open, that they now represent that they believed was already before this Court, paragraph 7, their February 9 motion. (On February 5 when they contacted Mr. Amato, they believed a motion to open was before the Court, what was there logic or procedure going to be to file or re-file another one?). (They also state within this paragraph 7, they became aware, for the first time, on February 6 of a missing page?).

III. <u>Plaintiff Lattanzio's argument to this Court</u>:

1. This plaintiff submits to this Court that this story by the defendants does not make logical sense, nor should it be accepted as "good cause," to open the judgment entered;

2. That the defendants had from August 2002 until February 2004 to defend this matter and have done virtually nothing;

3. That in all motions and requests to this Court the defendants stated they have a "meritorious defense" to the claims of this plaintiff, but have failed to take or apply any remedy available to them to bring forth said defenses;

6

4. That the defendants represented to this Court in September 2003, after conducting NO discovery in over a year, they needed more time past the discovery deadline of September 19, 2003 to conduct a deposition and then would file a motion for summary judgment within 30 days, because they had a "meritorious defense," which they never filed, see plaintiffs Exhibit 1;

5. That the defendants have still failed to, file, a statement of corporate ownership, as required by the Court and have worked a fraud upon this Court by not being a legal entity or party, pursuant to F.R.C.P. 11;

6. That the defendants through their local counsel and through corporate counsel have in bad faith misrepresented facts to this Court in an effort work an injustice and to gather information to personally attack this plaintiff and his business in an attempt to shut said business down, see plaintiff Exhibit 1 and pursuant to F.R.C.P. 11;

7. That the defendants waited until the "11th hour" to notify plaintiffs of their intentions knowing that plaintiffs would have been preparing for a hearing in damages and that would be a costly process. However they gave NO consideration to that by still waiting until Thursday then Friday to act before a "hearing on damages" scheduled for Monday. (They knew it would cost the plaintiffs if plaintiff were going to attend);

8. If the defendants had read the order of this Court printed in the left margin of the October 23, 2003 default notice, which they admitted they received in October, they should have expected the plaintiff to file a motion for judgment on or before November 21, 2003, yet they made no effort to contact plaintiffs or counsel for.

7

IV. <u>Plaintiff Lattanzio's legal argument to this Court</u>:

Within the second Federal district, Courts have concluded that; "the responsibility and consequence of failing to meet a deadline falls upon the party that missed the deadline. A party takes significant risks when it seeks an extension of a deadline late on the <u>day of the deadline</u>; that is, at the proverbial eleventh hour, see Bruce v. County of Rensselaer, No. 02-CV-0847 (N.D.N.Y. 10/27/2003). Here, defendants not only failed to comply with the clear orders and deadlines set by this Court and then they now created a story, that it wants this Court to believe constitutes "good cause" to open, but they intentionally waited until the last minute, to act, which conduct is clear evidence of being remiss in one's duties, see Wells v. Rockefeller, 728 F.2d 209, 213-14 (3d Cir. 1983); In Whitehead v. Malone, 2002 WL 849583, at *4 (N.D. Ill. 2002), ("litigation strategy cannot be deemed 'good cause.'"). The third Circuit looked at "Wells," when they rejected a claim that there was good cause for vacating a default judgment where the defendant allowed the default to occur as a matter of litigation strategy. This plaintiff submits that if this Court reviews the plaintiffs December 12, objection to defendant's motion to open, which they still have failed to submit (Exhibit 1), even though they now know the supplemental filing order, this Court could conclude something is amiss. The defendants logic that this was some kind of error, and then trying to place that error on this plaintiff is insulting, especially from the partner of the law firm, who did file an appearance in August 2002. Paragraph two of Judge Dorsey's notice clearly reads, "Counsel and Pro Se parties are required to become familiar . . . . . . filing of trial memoranda." What were defendants doing from August 2002 to February 2004. The third Circuit also rejected a claim and ruled; [Defendant argues that the default occurred because of his counsel's

8

reasonable error], [In any event, defendant's explanation does not justify his failure to present any semblance of a defense against the suit], the district court properly refused the motion to open the judgment in the circumstances. The defendants have had more then an ample opportunity to defend this matter, which they have chosen not to do. For them to now come forward, with the claim that they did not receive the reverse page of a supplemental order, (when five copies were provided), along with them having a "meritorious defense" the (working) day before the "hearing in damages" is just not "good cause," nor is it fair. In addition, the clear fact that the defendants have in bad faith used this Court and this proceeding to work a personal attack on the plaintiff and his business outside this matter should add enormous weigh to a negative conclusion of the defendants having "good cause." The defendants can manipulate the system, communicate and transfer discovery deposition information (from this case, that hey moved this Court for an extension to obtain) overnight it to AMTA corporate headquarters, that they fail to disclose operates defendant (over a year) and have a school director of an AMTA member school file a "petition for declaratory ruling," all with the intent to destroy the plaintiff's business, But they can't read and comprehend past paragraph 4, which it clearly does not make (legal) sense if you stop there. It is also insufficient as grounds for good cause if in fact the law firm for the defendants ignored or did not pay attention to the Courts supplemental orders or had intentional designs to.

V. <u>Conclusion</u>:

For the reasons enumerated and stated above, the defendants fall way short of existing case law and the F.R.C.P. "good cause," and as such this Court should firmly deny with prejudice, the defendants motion to vacate the judgment and set aside the default. If

this Court grants the defendants motion, then this plaintiff respectfully asks that plaintiff be allowed to first present a bill of costs for the preparation costs incurred for the hearing in damages and the bill of costs for defendants failure to accept waiver of summons pursuant to F.R.C.P. 4(d)(12) (G) and 4(d)(3) that this plaintiff was going to present at said hearing and if approved, that a condition for granting of said motion, is an order that all of said costs be first paid for by the defendants. The plaintiff further respectfully asks this Court in the interest of ethics, fair play and justice to review his Dec. 12, 2003 objection (Exhibit 1), which the defendants had but failed to submit, and if warranted investigate the conduct of the defendants, their AMTA corporate and local counsel or request that this plaintiff file appropriate motions for sanctions addressing such.

RESPECTFULLY,
JIM LATTANZIO, pro se

*[signature]*

c/o Galen Institute, LLC
1025 Silas Deane Highway
Wethersfield, CT 06109
(860) 721-1904

## CERTIFICATION OF SERVICE

This is to certify that on February 20, 2004 a copy of this objection was hand delivered to the following:

Genovese, Vehslage & Chapman, Counsel for all defendants
500 Enterprise Drive
Rocky Hill, CT 06067

Thomas A Amato for Galen Institute
357 East center St
Manchester CT 06040

BY
JIM LATTANZIO, pro se

*[signature]*

Jim Lattanzio,

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JIM LATTANZIO, INDIVIDUALLY<br>&<br>GALEN INSTITUTE LLC, ACTING BY<br>JIM LATTANZIO, ITS SOLE MEMBER<br>PLAINTIFFS<br><br>vs.<br><br>COMMISSION ON MASSAGE THERAPY<br>ACCREDITATION (COMTA), ET AL<br>DEFENDANTS | CASE NO. 3:02CV1232 (PCD)<br><br>PLAINTIFFS OBJECTION<br>TO DEFENDANTS MOTION<br>TO OPEN DEFAULT<br><br>DECEMBER 12, 2003 |

Now comes the plaintiff, Jim Lattanzio and within 21 days he objects to the defendant's motion to open default, dated November 21, 2003. As grounds therefore, the plaintiff states and submits the following as his <u>memorandum</u> thereof:

The defendants through their local and parent corporate council have proceeded in this matter with extreme bad faith. They have with intent, abused the Connecticut local rules of procedure to work an injustice and to harass, cost and delay the plaintiffs case. They have not been forthright with truthful information and certainly not with corporate disclosure. They have also used discovery information outside these proceedings in an attempt to harass, intimidate and cause damage to the plaintiffs business. These acts by the defendants and there local as well as corporate counsels are blatant and intentional and have been committed for the proposes, to circumvent justice and the plaintiffs case. The following paragraphs with exhibits should clearly show that the intent of the defendants and their counsel are clearly not to fairly adjudicate this matter and that they have not been conducting themselves ethically:

**Service of plaintiff's motion:**

1. This plaintiff did serve upon the defendants and certify as to such service a copy of his motion for default, dated September 28, 2003, see exhibit A, affidavit;

2. The defendants have stated that they did not receive a copy of said motion, however pursuant to FRCP 4, the defendants were served;

3. Upon information and belief, the defendants took no action on said notice because they wanted to stall this matter, knowing it is very easy to file a motion to open and in most instances it is granted;

**Defendants Bad Faith:**

4. This plaintiff discovered that the defendant COMTA is in fact a d/ba/ of the American Massage Therapy Association, (hereinafter AMTA), with offices in Illinois, through a judicial admission made by the AMTA to a Federal Court in Kansas on September 10, 2003, see exhibit B, motion from;

5. Pursuant to the Special Orders, Supplemental Orders, this plaintiff contacted local counsel for this defendant for his consent or objection to the joining in of the parent corporation AMTA, a fact now known that was not disclosed as per local Order, RE: Disclosure Statement, clearly states in part; "any party to action shall identify all its parent corporations;"

6. The AMTA is in fact the parent corporation of the defendant COMTA and was never identified as such by defendants as required;

7. The defendants have still not, even within their motion to open, identified the AMTA as the defendants parent corporation;