

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GALEN INSTITUTE, LLC, and JIM LATTANZIO<br>    Plaintiff | : <br> : <br> : <br> : | CASE NUMBER:<br>3:02CV1232-PCD |
| vs. | : <br> : | |
| COMTA, Commission on Massage Therapy Accreditation and CAROLE OSTENDORF, Individually and as Executive Director of COMTA<br>    Defendant. | : | APRIL 7, 2004 |

### MEMORANDUM OF LAW SUPPORTING DEFENDANTS' MOTION TO PRECLUDE EXPERT WITNESS AND DOCUMENTARY EVIDENCE

This action was commenced by way of a seven count complaint in which the plaintiffs allege various aspects of wrongful conduct on the part of the defendants, which occurred during the plaintiffs' attempt at accreditation by the defendants' accrediting organization. This matter is currently scheduled to be "ready for trial" on April 12, 2004.

On January 31, 2003 (mistakenly dated January 31, 2002) parties submitted a "Joint 26F Report." The body of this report, specifically, page 6, number 7 reads "the plaintiffs do not intend to call expert witnesses at trial. In the event they do so, plaintiffs shall furnish defendant's attorney with a list of all trial experts and provide reports to them pursuant to Fed. R. Civ. P. 26(a)(2) at least 90 days in advance of the deadline for

completing all discoveries…" The deadline set forth in this joint report was altered by the Court's order of 2/26/03 appearing on the joint 26F report, whereby the Court ordered all discovery to be completed by 6/16/03, modifying the discovery deadline date in the 26F report from the contemplated December 31, 2003 deadline. The Court went on to indicate in that order, "all other deadlines as set forth in the report are to be modified accordingly."

Subsequent to the Court's order on the joint 26F report, the parties filed a joint motion to extension of time to complete discovery, dated May 11, 2003. In its order dated May 20, 2003, the Court ordered, "all discovery to be completed by September 19, 2003…"

Pursuant to the Court's "Trial Preparation Order" the defendants received from the plaintiff on March 19, 2004, Section A of the parties joint trial memorandum. It was in Section A of the plaintiffs' part of the joint trial memorandum that the plaintiff, for the first time in the context of this case, set forth a desire to call an expert witness at trial in this matter. On March 19, 2004, the plaintiff indicated in part 6 of section A of the trial memorandum that they intended to call Chris Folkers as to the issue of damages in this case. Specifically they indicated that:

> "Mr. Folkers will give opinion as to the monetary losses, costs as well as the irreparable harm and damages that the plaintiff has suffered as well as testify to the damage analysis that was conducted. This opinion and testimony will be

> based in part on industry standards, national averages, usual growths and patterns and the effect of "not" having access to the federal financial aid system as well as long-term effects on the plaintiffs' business."

In the context of this disclosure the plaintiffs also gave a three-sentence synopsis of Mr. Folkers background experience. No report, contemplated by F.R.C.P. 26(a)(2) has been disclosed related to Mr. Folkers. During the Settlement/Status Conference held on March 31 with PJO Lawrence Iannotti, the plaintiffs agreed to disclose a formal report generated by Mr. Folkers. This disclosure would occur upon the completion of a joint proposed protection order, or, alternatively, an order of protection entered by this Court, related to matters deemed proprietary by the plaintiff which would be included in the report offered by Mr. Folkers. The parties are in the process of determining whether or not an order of protection can be agreed upon related to Mr. Folkers report.

On July 14, 2003 the defendants propounded upon the plaintiffs a set of ten Interrogatories and seven Requests for Production. Pursuant to the Court's previously mentioned order of May 20, 2003 all discovery was to have been completed by September 19, 2003. On September 29, 2003 the defendant filed a motion to extend the time in which they could file a Motion for Summary Judgment and to compel the answers to the pending written discovery and the plaintiff's deposition.

Unbeknownst to the defendants the plaintiff had mailed answers and objections to

the pending Interrogatories and Requests for Production, with a cover letter dated September 26, which was received in the defendant's office on September 30, 2003.

On October 6, 2003 the Court entered an order on the defendant's motion regarding the time to file for summary judgment and to compel discovery, ordering compliance with the written discovery by October 6, 2003 or the plaintiffs' action will be dismissed.

The 'answers' to the July 14, 2003 written discovery requests submitted by the plaintiff included an assertion by plaintiff that two requests for production (numbers 2&3) would be responded to at a later time. These two Requests for Production are as follows.

Request for Production number 2 requested,

> "All bills for each item of expense that are claimed to have been incurred in response to Interrogatory No. 6." [Interrogatory No.6 asked, "For each item of special damages claimed in the complaint, state the amount of damages and how said loss is computed."]

The plaintiff objected to this interrogatory and, objected in part to Request for Production number 2 and answered it in part. The plaintiff's answer to the Request for Production was that:

> The defendants know the expenses and fees it charged the plaintiff for their services. The actual expenses incurred in plaintiff claim are included in plaintiff's 2002 financial statement that has not been produced as of this date by the plaintiffs cpa firm. **A copy of this statement will be provided to the defendants when it is available.**" (emphasis added)

Request for Production Number 3 requested:

> "Copies of all business tax returns relating to lost income filed by the Plaintiff Jim Lattnzio and Galen Institute, LLC for a period of 3 years prior to the date of the incident and for all years subsequent to the date of the incident to and including the date hereof."

The plaintiff answered this request objecting in part and answering in part:

> "Galen Institute is a sole membered LLC, therefore there are no business tax returns relating to lost income. The losses or costs for 3 years prior are reflected in the business financials, which the defendants have in the SSR, Appendix. [Self Study Report, submitted as a part of the accreditation process.] Plaintiff's 2002 financial statement that (sic) has not been produced as of this date by the plaintiffs cpa firm. **A copy of this statement will be provided to the defendants when it is available.**" (emphasis added)

Subsequent to the plaintiff's answers to the pending written discovery being submitted to the defendants, the plaintiff, James Lattanzio, was deposed on November 6, 2003. In the course of that deposition, Mr. Lattanzio was asked about the outstanding compliance regarding the financial and other records of the Galen Institute and he indicated at that time that these records would be provided. To date, the defendant's have received no documents, which would support any claim for, or be used to show actual damages to the plaintiffs, aside from a single letter referring to monies ($2,750) paid to COMTA for the accreditation process. By not supplementing their answers, the plaintiffs have failed to disclose information pursuant to F.R.C.P., Rule 26(e)(2).

The defendant's submit that any records, which would be used to support a

damages claim would also be subject to disclosure pursuant to F.P.R.C. Rule 26(a)(1)(C) and the disclosure orders within the Joint 26f Report and the Court's orders thereon. As referred to earlier in reference to deadlines set forth in the Joint 26f Report, the Court mandated in its February 26, 2003 order that all discovery take place by 6/13/03. This order was subsequently extended by the Court (at the request of the parties) to September 19, 2003. In the context of the orders, which are a part of the Joint 26f Report, not only does outstanding discovery remain as to documents supporting a claim for damages, the plaintiffs have not filed a damages analysis as required by that joint report and the orders thereon.

## STANDARD OF REVIEW AND THE FACTORS TO BE CONSIDERED

As mandated by F.R.C.P. 26(a)(2) experts are to be disclosed in a specific manner, which includes the disclosure of a written report prepared and signed by the expert witness. This report is to contain the information considered by the witness in forming his/her opinions, in exhibits supporting that opinion, qualifications (including publications authored by the witness) the compensation to be paid to the witness and the listing of other cases the witness has testified in. The rule goes on to set forth that the expert witness disclosures shall be made as directed by the court. If there is no such time set forth by the court then the disclosure is to be made at least 90 days before the trial date or the trial

ready date. F.R.C.P. 37(c)(1) mandates that "a party that without substantial justification fails to disclose information required by Rule 26(a)… is not, unless such failure is harmless, permitted to use as evidence at a trial…any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." These defendants have failed to unearth case law from the Second Circuit Court of Appeals interpreting F.R.C.P. Rule 37(c)(1), which only came into effect during amendments in 1993. The defendants have found case law from other circuits which interpret this language and offer value guidance as to its application.

In the case of Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592 (4th Cir., 2003) the court considered the application of F.R.C.P., Rule 37(c)(1) in determining whether or not an opinion offered by an expert witness of the plaintiff should be excluded. In the context of that case, the expert at issue had been disclosed, along with the opinions he was expected to give, however, the opinion which was excluded was one which had not been formulated until the time of trial.

As a preliminary matter, the court indicated that the application of Rule 37(c)(1) is within the discretion of the district court. Id at 595. Citing Nelson-Salabes, Inc. v. Morning Side Dev., LLC., 284 F.3d 505, 513 n. 10 (4th Cir. 2002); see also Yeti by Molly

Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

In dismissing the notion that the moving party must show that the non disclosing party acted in bad faith, the Southern States Court cited to the "basic purpose of Rule 37(c)(1): preventing surprise and prejudice to the opposing party, see Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992) (noting that "the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure")." As stated above, Rule 37(c)(1), mandates that when a party fails to disclose information required by Rule 26(a) the party is not permitted to use the undisclosed evidence at trial, unless there is "substantial justification" or "such failure is harmless." "[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 37(c)(1)] was either justified or harmless...", Id at 596, citing Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996).

Alternatively, F.R.C.P., Rule 37(b) (2) also allows this Court to impose sanctions. Under that rule sanctions are imposed for failure to comply with an order by the Court compelling discovery. Under Rule 37(b)(2), the Second Circuit does look at the non-disclosing party's state of mind (i.e.; bad faith). Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2nd Cir. 2002). See also, Daval Steel Products v. M/V

Fakredine, 951 F.2d 1357, 1362-63 (2nd Cir. 1991). The court in Residential Funding Corp. was reviewing the district court's determination of giving an adverse inference jury instruction to cure nondisclosure of evidence. In determining if bad faith or a culpable state of mind existed the court found the offending party need not have acted willfully or with gross negligence. That court found, in order to cure the detriment to the prejudiced party a finding of negligence on the non-disclosing party would suffice justify the sanction imposed. Id at 107-08.

The defendants note the need for a finding of bad faith is more compelling when the relief requested is based upon F.R.C.P., Rule 37(b)(2), as that rule does not contain the language found in Rule 37(c)(1), which mandates a finding of substantial justification or harmlessness.

ARGUMENT AS TO EXCLUSION OF PLAINTIFFS EXPERT AND EVIDENCE:

As indicated above, the first notice the defendants had of the plaintiffs intention to call any expert witness in this case, and specifically Chris Folkers, was on March 19, 2004, approximately three weeks before the trial ready date in this case. This "disclosure" is also six months after the time in which all discovery was to be completed, pursuant to the court's order of May 20, 2003. Pursuant to the party's joint 26F report (page 6, paragraph 7), if the plaintiffs did decide to call an expert witness at the time of trial, they were to

furnish the defendants with a list of such experts and provide reports to the defendants "at least 90 days in advance of the deadline for compelling all discoveries." Thus, the plaintiffs' disclosure of any experts in this case, according to the orders in the case, should have been completed mid June of 2003.

As to the issue of undisclosed documents, the documents the plaintiff refers to in his Section A of the joint trial memorandum (specifically listed exhibits # 29-31 and 43-50) appear to contain significant financial and other records related to plaintiff's claims of damages. As best counsel for the defendant can tell, none of the listed exhibits have been produced either via the earlier referred to Requests for Production or pursuant to Rule 26(a).

The primary issue and concern of the defendants, related to the untimely disclosure of the plaintiffs' expert and the damages documentation is the surprise and prejudice it would work upon the defendants. The defendants would not be able to prepare to either cross-examine the plaintiffs' expert, review the documents prior to the time of trial or to obtain an expert of their own to review the damages documents and/or contradict the plaintiffs' expert's findings. As set forth above, the Southern States case cited to "the basic purpose of Rule 37(c)(1): Preventing surprise and prejudice to the opposing party…" Id at 596, (other citations omitted.) In determining whether or not the party seeking late

disclosure can show a "substantial justification" or show that the late disclosure is "harmless" the <u>Southern States</u> Court adopted as a guideline the five factors set forth in the district court's ruling in that case. These factors include "(1) The surprise to the party against whom the evidence would be offered; (2) The ability of that party to cure the surprise; (3) The extent to which allowing the evidence would disrupt the trial; (4) The importance of the evidence; and (5) The non-disclosing party's explanation for its failure to disclose the evidence.

In looking at the five factors included in the court's analysis, the defendants would submit that the surprise to the defendants is complete and the defendants had no reasonable basis to believe the plaintiff intended on calling an expert, given the language in the 26F report, wherein the plaintiff affirmatively indicates that they did not intend on calling an expert. While the existence of documents claiming to evidence damages is not a surprise in and of itself, the substance and impact of those documents remains a distinct surprise.

As to the defendant's ability to cure the surprise, assuming the case is trial ready and subject to be called in at any time starting April 12th, the defendants are without the ability to cure the surprise either by further discovery or retaining their own expert. This is true as to both the nondisclosure of documents and late disclosure of the plaintiff's expert.

As to item 3, there would be no disruption to the trial, as the trial has not yet

started. As to the importance of the evidence, it is the defendant's position that any party can testify to the damages in his or her own case. This being said, the defendants would acquiesce to the belief that the plaintiffs' case would be significantly curtailed by the inability to have an expert valuing the claims, of the rather complicated losses at issue in this case. It is uncontested that the plaintiff has failed to disclose any documentation of damages (aside monies paid to COMTA totaling $2,750.). Thus the damages documentation is important to the plaintiff's case.

As to the non-disclosing parties explanation for its failure to disclose the expert and the documents at issue, the defendants are without the ability to discern what possible explanation there would be for failure to disclose an expert and all damages information in a case which is been open in excess of eighteen months.

The defendants would also cite to the seventh circuit case of Miksis v. Howard, 106 F.3d 754 (7th Cir., 1997). In the Miksis case the trial court granted the plaintiff's Motion to Strike the defendant's expert, where the expert was not disclosed until three days before trial, which was also some 60 days after the deadline for such disclosure. Consistent with the Southern States court, the Miksis court indicated that such a sanction is "automatic and mandatory" unless the party can show the violation was "either justified or harmless." Id at 760, citing to Finley, at 1230. Continuing to cite Finely, the district court in Miksis

indicated that "delay until three days before trial is not harmless." Miksis at 760, citing to Finely at 1230. In the case now before this Court, the disclosure on the eve of trial is not only the expert, but also the vast majority of any evidence that expert would utilize to support his opinions.

Subsequent to Miksis the Seventh Circuit handed down David v. Caterpillar, 324 F.3d 851 (7th Cir., 2003). The David Court followed the rule that the sanctioned party has the burden to show the violation of Rule 26(a) was either substantially justified or harmless. Id at 857. The Court in David did vary slightly from the Fourth Circuit in what factors it considers in making the determination of substantial justification and harmlessness. Those factors included "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." Id at 857, (citations omitted.)

The Seventh Circuit evidently does not consider the importance of the evidence nor an explanation as to the basis of the violation, but does consider the existence or non-existence of bad faith. It is the defendants' position that there cannot be either substantial justification or harmlessness under the factors utilized by the David court.

The eighth circuit has similarly acknowledged the clear meaning of Rule 37(c)(1),

in finding that the party who failed to disclose in a timely manner bears the burden of showing either that they were substantially justified in the late disclosure or that such late disclosure was harmless. <u>Arabian Agricultural Services Co. v. Chief Industries, Inc.</u>, 309 F.3d 479, 483 (8th Cir., 2002). Although the seventh and eighth circuits do not appear to have adopted the analysis of the fourth circuit, speaking to the same five separate factors looked to by that court, their basic analysis of late disclosure is the same. Under F.R.C.P., Rule 37(c)(1) the plaintiff in this case bears the burden of proving that the late disclosure was subject to either substantial justification or would be harmless. As set forth above, utilizing the five factors in the <u>Southern States</u> case, it is the defendant's position that there can be no substantial justification for such late disclosure in this matter and further, such late disclosure would not be harmless. It is the defendant's position that the same result would occur under the four factors utilized in the <u>David</u> case.

                              DEFENDANT
                              COMTA, ET AL.,

By: _____
     Royce L. Vehslage
     Federal Bar #18006
     Genovese, Vehslage & Chapman
     500 Enterprise Drive
     Rocky Hill, CT 06067
     (860)513-3760

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 7th day of April, 2004, to the following counsel of record and pro se parties:

Attorneys for Plaintiffs, Galen Institute
Thomas Amato
357 East Center Street
Manchester, CT 06040

Attorneys for Plaintiff, Jim Lattanzio
Jim Lattanzio
Pro Se
Galen Institute
1025 Silas Deane Highway
Wethersfield, CT 06109

_____
Royce L. Vehslage