UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Apr 12  3 19 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

GALEN INSTITUTE, LLC, and JIM LATTANZIO
    Plaintiff

vs.

COMTA, Commission on Massage Therapy Accreditation and CAROLE OSTENDORF, Individually and as Executive Director of COMTA
    Defendant.

CASE NUMBER:
3:02CV1232-PCD

PLAINTIFFS TRIAL PREPARATION ORDER

APRIL 9, 2004

## SECTION A:

**1.** **Claims of fact proposed for stipulation as stipulated:**

a. The plaintiffs propose to stipulate as undisputed the following paragraphs within plaintiffs complaint that defendant has admitted to in defendants amended answer dated November 26, 2002 to said complaint.

1. Paragraphs 2, 3, 4 and 5 within "parties" are stipulated to. **Agreed to.**

2. Paragraph 6 within "jurisdiction and venue" is stipulated to. **Agreed to.**

3. Paragraph 7 in part, within count one "negligence" as to "plaintiffs requesting information" is stipulated to. **Agreed to.**

4. Paragraph 8 within count one 'negligence' is stipulated to. **Agreed to.**

5. Paragraphs 11, 12 and 15 within count two "fraud" are stipulated to. **Agreed to.**

6. Paragraph 23 in part within count three "breach" as to "plaintiff paying $2,000 to COMTA" is stipulated to. **Agreed to.**

7. Paragraphs 25, 26 and 32 within count three "reach" are stipulated to. **Agreed to.**

8. Paragraph 30 in part within count three 'breach" as to "Ostendorf requested additional information" is stipulated to. **Agreed to.**

9. Paragraph 34 in part within count four "fraud" as to "defendants knew commission meets twice yearly" is stipulated to. **Agreed to.**

10. Paragraph 35 within count four "fraud" is stipulated to. **Agreed to.**

11. paragraph 41 in part within count four "fraud" as to "defendants COMTA have no agent or office in CT" is stipulated to. **Agreed to.**

12. Paragraph 54 in part within count six "trover" as to "plaintiffs sent mail on June 4, 2002." **Agreed to.**

Section C1. All parties appear to agree with the proposed stipulated facts.


**2.    Proposed findings of fact, with specification of each witness, document, pleading, and/or tangible physical evidence on which such finding could be premised. Such proposed findings, with the claims of fact (1 above) shall constitute the proof on which the claims of relief are premised.**

a. The plaintiffs propose to find the following as facts which it pled within plaintiffs complaint, and the defendants have denied in full or in part thereof, supported by the listed witnesses and evidence supporting each said, which fact will constitute the basis for the relief sought.

1. On the pleadings within count one of NEGLIGENCE.

The plaintiffs propose to find as facts paragraphs 7 in part, paragraphs 9 and 10 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

Witnesses: Listed as 1, 2, 3, 4, 5, 6 and 7.

Evidence: Exhibits, 1, 2, 3, 4, 11, 12, 17, 18, 19, 35, 36, 37 and 39.

**The defendant has insufficient knowledge to admit the date on which Galen first**

2

**sought information on accreditation, but has no evidence to refute the August 1999 date. As to the allegations in paragraph 9, the defendants would agree with the proposed finding of facts, but for the general allegation of negligence. As to this allegation, the defendant's maintain all evidence they would offer speaks to the refutation of negligence.**

**As to paragraph 10, the defendants disagree with the assertion that they were not prepared to accredit Galen, which will be testified to by Carole Ostendorf, John Goss Brenda Griffith, Dee Meux And/Or Michelle Minch. Virtually all of the defendant's documentary evidence goes to showing COMTA's readiness and ability to perform the accreditation.**

Section C2. The plaintiffs disagree with defendant's assertion that they can refute the above paragraphs within plaintiff's complaint. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits to that effect. In addition, testimony of Galen staff as listed in this section 2(a)(2) above, the cross examination of defendants witnesses will also bear plaintiffs claim out.

2.      On the pleadings within count two of FRAUD.

The plaintiffs propose to find as facts paragraphs 13 and 18 in part, paragraphs 14, 16, 17, 19, 20 and 21 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

Witnesses: Listed as 1, 2, 3, 4, 5, 6, 7 and 22.

Evidence: exhibits, 1, 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49 and 50.

**The defendants cannot speak to paragraphs 13 & 18 as the plaintiff does not specify what he will prove and what he won't.**

**The defendant's agree with paragraph 14.**

3

**The defendant's disagree with paragraph 16, which allegations will be refuted by Carole Ostendorf, John Goss and virtually all documentation the defendant will present.**

**The defendants disagree with paragraph 17. The plaintiff has never produced any documentation to support these claims of damages.**

**The defendant's disagree with paragraphs 19, 20 & 21, which general allegations of fraud will be refuted by Carole Ostendorf, John Goss and virtually all documentation the defendant will present. The plaintiff has never produced any documentation to support these claims of damages. Further, Carole Ostendorf will testify as to the general requirements of schools in meeting the accreditation requirements as not being as demanding as set forth in paragraph 20.**

Section C2. The plaintiffs disagree with defendant's assertion that they can refute the above paragraphs within plaintiff's complaint and thus were acts of fraud. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions of no damage and non-demanding. In addition to the testimony of Galen staff as listed in this section 2(a)(2) above, the cross examination of defendants witnesses will also bear plaintiffs claim out.

3.  On the pleadings within count three of BREACH.

The plaintiffs propose to find as facts paragraphs 23 and 30 in part, paragraphs 22, 24, 27, 28, 29, 31 and 33 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

Witnesses: Listed as 1, 2, 3 and 4.

Evidence: Exhibits, 1, 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49 and 50.

The defendants cannot speak to paragraphs 23 & 30 as the plaintiff does not specify what he will prove and what he won't. That being said the defendants do not contest that the plaintiff paid $2,000. as advance expense fees.

As to paragraph 22, the defendants don't contest the payment of the application fee on or about August 2001. Carole Ostendorf and John Goss will testify disputing any promise of accreditation by any date.

As to paragraph 24 the defendants do not contest that they received the Self Study Report referred to, which would have contained propriety materials, but contest the characterization of trade secrets of certain material, and will rely on this material and let it speak for itself.

Paragraph 27 is contested and Carole Ostendorf and John Goss will testify disputing these allegations that the revisions met COMTA's requests. The defendants do not dispute a packet of information was received from the plaintiffs on December 21, 2001.

As to paragraphs 28 & 29 Carole Ostendorf and John Goss will testify disputing any promise of accreditation by any date and this testimony combined with the documents submitted to COMTA by the plaintiffs, COMTA's written requests for documentation and comment on documentation already received and COMTA's policies and procedures.

As to paragraph 31, the defendants contest that the plaintiff sent further documentation as quickly as he alleges. The date of this subsequent correspondence, signed by the plaintiff was 1/23/02. The defendant's also contest that the submissions on 1/23/02 met the defendant's requests/needs. Carole Ostendorf and John Goss will testify disputing this allegation.

As to paragraph 33, it is not contested that the timeline for fulfillment of the accreditation

**process was pushed back. Carole Ostendorf and John Goss will testify disputing the characterizations of that delay as set out in paragraph 33. The defendants will also rely on the entirety of the documentation surrounding the accreditation process up to the point in time at issue in paragraph 33.**

Section C2. The plaintiffs disagree with all of the defendant's assertions of dispute within the above paragraph and that plaintiff was promised implied dates of accreditation and plaintiff did meet all documentation requirements per defendant's standards. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions. The testimony of Galen staff as listed in this section 2(a)(3) above and the cross examination of defendants witnesses will also bear out plaintiffs claim of breach.

4.     On the pleadings within count four of FRAUD.

The plaintiffs propose to find as facts paragraphs 34 and 41 in part, paragraphs 36, 37, 38, 39, 40, 42, 43, 44, 45, 46 and 47 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

    Witnesses: Listed as, (1 through 22).

    Evidence: Exhibits, (1 through 50).

**The defendants cannot speak to paragraphs 34 & 41 as the plaintiff does not specify what he will prove and what he won't.**

**As to paragraphs 36, 37 & 38, the defendants contest the plaintiffs' characterization of the onsite visit and that the information requested was made available . Carole Ostendorf, Patricia Santoro, Brenda Griffith, Dee Meux And/Or Michelle Minch will testify disputing the characterizations and that the information requested was made available while conducting the onsite visit on March 25 & 26, 2002. These individuals will also testify as to**

the egress being not suitable for wheelchair access.

The defendant's contest paragraphs 39 & 40 and Carole Ostendorf and John Goss will testify disputing these assertions. The defendant's will also rely on their recognition as an accreditation organization on the federal and state level and the COMTA/AMTA agreement.

As to paragraphs 41 & 42, the defendant's contest the need for a registered office or agent or a certificate of authority and will rely on the statutes the plaintiff cites in those paragraphs and relevant case law.

The defendant's contend paragraph 43 is irrelevant and therefore inadmissible.

As to paragraph 44, the defendant's do not contest that they are recognized by the State in the applicable statute as an accrediting agency. The defendants contest the allegations of misrepresentations and bad faith and Carole Ostendorf and John Goss will testify disputing these assertions.

As to paragraphs 45-47 the defendants contest any allegations of deception, or illicit motivations and further dispute that COMTA is not a nationally recognized accrediting organization. Carole Ostendorf, Patricia Santoro and John Goss will testify disputing these assertions.

Section C2. The plaintiffs disagree with defendant's assertion that they can contest, dispute and refute the above paragraphs within plaintiff's complaint and thus were acts of fraud. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will show ample information was made available to defendants throughout the process to verify standards and that facility is suitable for wheel chair, which will make clear defendants bad faith and fraudulent acts. By the plaintiff's documentation and testimony and defendants own

admissions, defendant's authority to operate at both Federal and State levels and their recognition status will be disputed. In addition the testimony of Galen staff as listed in this section 2(a)(4) above and the cross examination of defendants witnesses will also bear plaintiffs claim out.

5.   On the pleadings within count five of INTERFERENCE.

The plaintiffs propose to find as facts paragraphs 48, 49, 50 and 51 in full. The following witnesses will testify and evidence will be proffered in proof thereof.

   Witnesses: Listed as, (1 through 7 and 14 through 22).

   Evidence: Exhibits, (18 through 50).

**As to paragraphs 48, 50 & 51 the defendants contest any allegations of false statements, opinions or claims (the latter related to the Dept. of Public Health). . Carole Ostendorf, Brenda Griffith, Dee Meux And/Or Michelle Minch will testify disputing these allegations. As to paragraph 49, the defendants contest "said statement" and that any "duress" was caused and Carole Ostendorf, Brenda Griffith, Dee Meux And/Or Michelle Minch will testify disputing these allegations. As to the remainder of the paragraph the defendant's assert the student body showed signs of nervousness or 'unrest' at the time the onsite visit team arrived.**

   Section C2. The plaintiffs disagree with defendant's assertion that they can contest the above paragraphs within plaintiff's complaint. Plaintiff will present evidence in the form of plaintiff and defendant documents and testimony of Galen staff and former students as listed in this section 2(a)(5) above and the cross examination of defendants witnesses that will bear plaintiffs claim out. Plaintiff will also show by said evidence that defendants exceeded their authority and their standards in their acts and did interfere with plaintiffs business affairs.

8

6.  On the pleadings within count six of TROVER.

The plaintiffs propose to find as facts paragraphs 54 in part, paragraphs 52, 53, 55 and 56 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

Witnesses: Listed as 1, 2, 3 and 4.

Evidence: Exhibits, 11, 12, 15, 16, 17, 20 and 21.

**The defendants cannot speak to paragraph 54 as the plaintiff does not specify what he will prove and what he won't.**

**As to paragraph 52, see the defendant's response to paragraph #27.**

**As to paragraph 53, the defendants contest the characterization as to how the records at issue were obtained. Carole Ostendorf and Patricia Santoro will testify as to requests for and any obtaining of student records.**

**Paragraph 55 is not contested.**

**Paragraph 56 is a legal conclusion, not a finding of fact.**

Section C2. The plaintiffs disagree with defendant's assertion that they can contest the above paragraphs within plaintiff's complaint. Plaintiff will present evidence in the form of plaintiff and defendant documents and testimony of Galen staff as listed in this section 2(a)(6) above and the cross examination of defendants witnesses that will bear plaintiffs claim out. Plaintiff submits that how defendants came into possession of plaintiff's documents and records is not at issue here, but that defendants by their own admission have refused and failed to return said.

7.  On the pleadings within count seven of CUTPA.

The plaintiffs propose to find as facts paragraphs 57, 58, 59 and 61 in full. The following witnesses will testify and evidence will be proffered in proof thereof:

9

Witnesses: Listed as 1, 2, 3 and 4.

Evidence: Exhibits (1 through 50).

**To the extent paragraphs 57, 58, 59 & 60 have general factual allegations, they are contested (but for the defendants representations of themselves, which admitted) and the defendants submit the entirety of their case will refute this allegation.**

Section C2. The plaintiffs disagree with defendant's assertion that defendants can contest the above paragraphs within plaintiff's complaint. Plaintiff will present evidence in the form of State Statute that defendant when asserting a defense to C.U.P.T.A. is burdened with proof of exemption and that defendant lacks said proof. Plaintiff and defendant documents and testimony of Galen staff as listed in this section 2(a)(7) above and the cross examination of defendants witnesses that will bear plaintiffs claim out. Plaintiff will also show by said evidence that defendants were at the time not legally conducting business and therefore were in fact committing an unfair trade act.

8.  On the claims of relief sought.

The above claims when proven shall constitute the proof on which the claims of relief sought in the following paragraphs 1, 2, 3, 4 and 5 in full.

**3.  Claims of law, with the authority on which each claims I premised and organized as they relate to each theory on which relief is sought.**

1.  On the claim in count one of NEGLIGENCE.

The authority is based upon the following cases(s): <u>RK Constructors, Inc. v. Fusco Corp.</u>, 231 Conn. 381 (1994), <u>Close, Jensen & Miller v. Lomangino</u>, 51 Conn. App. 576 (1999), <u>Morrison v. Hansen</u>, 128 Conn. 62 (1941) and <u>Bilodeau v. City of Bristol</u>, 38 Conn. App. 447 (1995) to

which the claim for compensatory and punitive monetary damage and all costs as relief is sought.

**As to plaintiff's claim based upon negligence, this claim is addressed in the defendants' first claim of law. Further, none of the cases sighted by the plaintiff support punitive damages, as no case law in Connecticut supports an argument for punitive damages.**

2.  On the claim in count two and four of FRAUD(s).

The authority is based upon the following cases(s); Miller v. Appleby, 183 Conn. 51 (1981), Wedig v. Brinster, 1 Conn. App. 123 (1983) and D'Uluisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206 (1987) to which the claim for compensatory and punitive monetary damage and all costs as relief is sought.

**As to plaintiff's claim based upon fraud, this claim is addressed in the defendants' first claim of law. Further, as set forth in Miller, at 55, the plaintiff must prove such a case, not by a preponderance of evidence, but by "clear and satisfactory evidence".**

3.  On the claim in count three of BREACH, implied.

The authority is based upon the following cases(s); Rahmati v. Mehir, 188 Conn. 583 (1982), Brighenti v. New Britian Shirt Corporation, 167 Conn. 403 (1974) and D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206 (1987) to which the claim for compensatory and punitive monetary damage and all costs as relief is sought.

**As to plaintiff's claim based upon Beach of Contract, this claim is addressed in the defendants' first claim of law. Further, none of the cases sighted by the plaintiff support punitive damages, as no case law in Connecticut supports an argument for punitive damages in a contract case.**

4.  On the claim in count five of INTERFERENCE WITH EXPECTANCY.

The authority is based upon the following cases(s); Blake v. Levy, 191 Conn. 257 (1983), Daley

11

v. Aetna Life & Casualty Co., 249 Conn. 766 (1999) and Harry A. Finman & Sons v. Conn. Truck & trailer Services, 169 Conn. 407 (1975) to which the claim for compensatory and punitive monetary damage and all costs as relief is sought.

**As to plaintiff's claim based upon "Interference", this claim is addressed in the defendants' first claim of law. Further, this claim, as set forth in the complaint is an alternative theory of fraud and thus subject to the clear and convincing evidence standard set forth in Miller above.**

5.   On the claim in count six of TROVER, based on conversion.

The authority is based upon the following cases(s); Falker v. Samperi, 190 Conn. 412 (1983) and Epstein v. Automatic Enterprises, 6 Conn. App. 484 (1986) to which the claim for compensatory, punitive monetary damage, the return of plaintiffs property and all costs as relief is sought.

**This count is addressed in defendants' claim of law "C".**

6.   On the claim in count seven of CUTPA.

The authority is based upon the following cases; Webb Press Services Corp. v. New London Motors, 203 Conn. 342 (1987) to which the claim for compensatory and punitive monetary damage as relief is sought.

**In addition to the defendants' claim of law "D", it is the defendants' contention that CUPTA is not applicable to accrediting agencies, as such agencies are professional in their operation and thus not subject to CUPTA. See Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48 (1998).**

7.   **Note**: The plaintiff will seek additional "special relief" in damages based upon Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48 (1998) and as the Court may deem proper to address irreparable legal issues that through the acts of the

defendants have caused to occur and the continued intentional and willful acts of the defendants during this matter that were solely directed at putting the plaintiff "out of business."

8. **The defendants' don't know what "special damages" the plaintiff seeks, however, the <u>Beverly Hills</u> case sets forth that damages need to be certain and not indefinite in their nature.**


4. **A list of proposed exhibits (plaintiff's numbered 1 through 50).**

   a. Evidence: as exhibits listed (1 through 50) Note: As these documents were contained in packages, for the convenience of space and extreme total number of by each page, the packages which will contain sets of related documents and will be marked as an exhibit with a sub marking of "1a, 1b, 1c..."

   1. Initial 1999 COMTA Standards and statements (Exhibit 1).
   2. Subsequent 2001 COMTA Standards and statements, (Exhibits 2).
   3. Subsequent 2002 COMTA Standards and statements (Exhibit 3).
   4. Subsequent 2002 COMTA Standards on "Compact Dist," (Exhibit 4).
   5. Initial Communications from COMTA to Galen, (Exhibit 5).
   6. Initial Communications from Galen to COMTA, (Exhibit 6).
   7. Galen initial "application documents" to COMTA, (Exhibit 7).
   8. Galen subsequent "application documents" to COMTA, (Exhibit 8).
   9. Records of payments to COMTA by Galen, (Exhibit 9).
   10. Invoices from COMTA to Galen, (Exhibit 10).
   11. The 1st Galen "Self Study Report, " (SSR) to COMTA, (Exhibit 11).

12. The 1st Galen "appendix" to (SSR) to COMTA, (Exhibit 11).

13. Communications from COMTA i.e., 1st SSR to Galen, (Exhibit 13).

14. Communications from Galen i.e., 1st SSR to COMTA, (Exhibit 14).

15. The revised Galen "Self Study Report," (SSR) to COMTA, (Exhibit 15).

16. The revised Galen "appendix" to (SSR) to COMTA, (Exhibit 16).

17. Subsequent materials supplied to COMTA during onsite, (Exhibit 17).

18. The COMTA "evaluation report," regarding site visit, (Exhibit 18).

19. The Galen "reply" to COMTA "evaluation report," (Exhibit 19).

20. Galen withdrawal communication to COMTA, (Exhibit 20).

21. Galen demand communication to COMTA, (Exhibit 21).

22. COMTA replies to Galen withdraw communication, (Exhibit 22).

23. COMTA's "commission" communications, (Exhibit 23).

24. Galen student "attendance records" during onsite visit, (Exhibit 24).

25. Galen student "achievement records" during onsite visit, (Exhibit 25).

26. Galen "Business records" during onsite visit, (Exhibit 26).

27. Galen "financial records" during onsite visit, (Exhibit 27).

28. Galen "student records" during onsite visit (Exhibit 28).

29. Galen "business records," (Exhibit 29).

30. Galen "financial records," (Exhibit 30).

31. Galen "student records," (Exhibit 31).

32. Communications to and from Department of Public Health, (Exhibit 32).

33. Communications to and from Department of Higher ED, (Exhibit 33).

34. Documents from the Department of Higher ED, (Exhibit 34).

35. Connecticut law documents "title" and "CGS," (Exhibit 35).

36. Federal title 34, CFR 602 et seq, chapters, (Exhibit 36).

37. COMTA web site front page and subsequent pages, (Exhibit 37).

38. AMTA web site front page and subsequent pages, (Exhibit 38).

39. COMTA advertising documents, (Exhibit 39).

40. AMTA advertising documents, (Exhibit 40).

41. COMTA judicial admission in Federal Courts, (Exhibit 41).

42. AMTA judicial admission in Federal Courts, (Exhibit 42).

43. Galen "student recruitment records," (Exhibit 43).

44. Galen "student enrollment records," (Exhibit 44).

45. Galen records of actual losses, (Exhibit 45).

46. Galen actual damage analysis documentation, (Exhibit 46).

47. Galen proof of permanent damages, (Exhibit 47).

48. Galen proof of permanent harm, (Exhibit 48).

49. Galen proof of irreparable damages, (Exhibit 49).

50. Galen proof of irreparable harm, (Exhibit 50).

**See the defendants' Motion to Preclude Expert Witness and Documentary Evidence, filed with the Court on April 7, 2004 as directed by Attorney Ionatti.**

**5.     A list of all witnesses expected to be called, with a brief summary of the testimony of each. <u>As to each expert witness</u>: a statement of area of expertise, attaching a curriculum vitae, if available; and the opinion to be expressed with a brief summary of the basis for the opinion.**

15

The following is plaintiffs list of WITNESSES as listed (1 through 22) and (23).

1. James Lattanzio, General Member of the plaintiff Galen Institute LLC.

   a. Will give testimony supportive as to all counts within complaint.

2. Donna Pitts, School Director of the plaintiff Galen Institute LLC.

   a. Will give testimony supportive as to all counts within complaint.

3. Donna De Decko, Operations Manager of the plaintiff Galen Institute LLC.

   a. Will give testimony supportive as to all counts within complaint.

4. Marjorie Hickey, Educational Coordinator of the plaintiff Galen Institute, LLC.

   a. Will give testimony supportive as to all counts within complaint.

5. Beth Hoffner, Instructor "present at visit" of the plaintiff Galen Institute LLC.

   a. Will give testimony supportive as to counts 1, 2, 4 5 within complaint.

6. David Priest, Instructor "present at visit' of the plaintiff Galen Institute, LLC.

   a. Will give testimony supportive as to counts 1, 2, 4, 5 within compliant.

7. Tracy Rauccio, Instructor "present at visit" of the plaintiff Galen Institute, LLC.

   a. Will give testimony supportive as to counts 1, 2, 4, 5 within complaint.

8. Lisa Iacolino, current Instructor of the plaintiff Galen Institute, LLC.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

9. Shylock Brown, current instructor of the plaintiff Galen Institute, LLC.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

10. Linda Boucher, current Instructor of the plaintiff Galen Institute, LLC.

    a. Will give testimony supportive as to counts 4, 5 within complaint.

11. Fran Harmeyer, current Instructor of the plaintiff Galen Institute, LLC.

    a. Will give testimony supportive as to counts 4, 5 within complaint.

12. Susan Passini, School Director, Fox Business Institute, Inc.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

13. Ann Watkins, former instructor of the plaintiff Galen Institute, LLC

   a. Will give testimony supportive as to counts 4, 5 within complaint.

14. Michael Carr, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

15. Karen Persson, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

16. Nochole Thronton, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

17. Erika Connolly, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

18. Sabita Kanhai, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

19. Teresa Connolly, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

20. Jill Frank, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

21. Judith Church, former student present at time of onsite.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

22. Deborah Brown, Connecticut Department of Public Health.

   a. Will give testimony supportive as to counts 4, 5 within complaint.

23. Chris Folkers, expert witness.

      a.     Mr. Folkers has an extensive background in management of and hands on training in the occupational training industry beginning in 1987, and as a business and financial planner and consultant. He is an expert on "accreditation" of schools by agencies, as he is now chairing the Council Overseeing Medical and Massage Therapy Accreditation. This body accredits occupational schools nationally.

      b.     Mr. Folkers will give opinion as to the monetary losses, costs as well as the irreparable harm and damages that the plaintiff has suffered as well as testify to the damage analysis that was conducted. This opinion and testimony will be based in part on industry standards, national averages, usual growths and patterns and the effect of "not " having access to the federal financial aid system as well as long-term effects on the plaintiffs business.

**See the defendants' Motion to Preclude Expert Witness and Documentary Evidence, filed with the Court on April 7, 2004 as directed by Attorney Ionatti.**


**6.　A description of each item of proposed evidence, whether testimonial or exhibit form, reciting evidence likely to be disputed or to require a ruling by the court, setting forth the basis and authority on which admissibility is premised.**

a.     The following is a description of evidence that will be submitted in exhibit form. The defendants will most likely dispute exhibits that plaintiffs propose. These plaintiff's exhibits consist of business records, documents and copies of official documents to and from plaintiff and defendant and those that plaintiffs has become aware of over time. The exhibits that originated

from defendant COMTA should be treated as admissions by the defendant party opponent. All other exhibits can be authenticated by plaintiff or defendant witnesses.

1. Initial 1999 COMTA Standards and statements (Exhibit 1).
2. Subsequent 2001 COMTA Standards and statements, (Exhibits 2).
3. Subsequent 2002 COMTA Standards and statements (Exhibit 3).
4. Subsequent 2002 COMTA Standards on "Compact Dist," (Exhibit 4).
5. Initial Communications from COMTA to Galen, (Exhibit 5).
6. Initial Communications from Galen to COMTA, (Exhibit 6).
7. Galen initial "application documents" to COMTA, (Exhibit 7).
8. Galen subsequent "application documents" to COMTA, (Exhibit 8).
9. Records of payments to COMTA by Galen, (Exhibit 9).
10. Invoices from COMTA to Galen, (Exhibit 10).
11. The 1st Galen "Self Study Report, " (SSR) to COMTA, (Exhibit 11).
12. The 1st Galen "appendix" to (SSR) to COMTA, (Exhibit 11).
13. Communications from COMTA i.e., 1st SSR to Galen, (Exhibit 13).
14. Communications from Galen i.e., 1st SSR to COMTA, (Exhibit 14).
15. The revised Galen "Self Study Report," (SSR) to COMTA, (Exhibit 15).
16. The revised Galen "appendix" to (SSR) to COMTA, (Exhibit 16).
17. Subsequent materials supplied to COMTA during onsite, (Exhibit 17).
18. The COMTA "evaluation report," regarding site visit, (Exhibit 18).
19. The Galen "reply" to COMTA "evaluation report," (Exhibit 19).
20. Galen withdrawal communication to COMTA, (Exhibit 20).
21. Galen demand communication to COMTA, (Exhibit 21).