22. COMTA replies to Galen withdraw communication, (Exhibit 22).

23. COMTA's "commission" communications, (Exhibit 23).

24. Galen student "attendance records" during onsite visit, (Exhibit 24).

25. Galen student "achievement records" during onsite visit, (Exhibit 25).

26. Galen "Business records" during onsite visit, (Exhibit 26).

27. Galen "financial records" during onsite visit, (Exhibit 27).

28. Galen "student records" during onsite visit (Exhibit 28).

29. Galen "business records," (Exhibit 29).

30. Galen "financial records," (Exhibit 30).

31. Galen "student records," (Exhibit 31).

32. Communications to and from Department of Public Health, (Exhibit 32).

33. Communications to and from Department of Higher ED, (Exhibit 33).

34. Documents from the Department of Higher ED, (Exhibit 34).

35. Connecticut law documents "title" and "CGS," (Exhibit 35).

36. Federal title 34, CFR 602 et seq, chapters, (Exhibit 36).

37. COMTA web site front page and subsequent pages, (Exhibit 37).

38. AMTA web site front page and subsequent pages, (Exhibit 38).

39. COMTA advertising documents, (Exhibit 39).

40. AMTA advertising documents, (Exhibit 40).

41. COMTA judicial admission in Federal Courts, (Exhibit 41).

42. AMTA judicial admission in Federal Courts, (Exhibit 42).

43. Galen "student recruitment records," (Exhibit 43).

44. Galen "student enrollment records," (Exhibit 44).

45. Galen records of actual losses, (Exhibit 45).

46. Galen actual damage analysis documentation, (Exhibit 46).

47. Galen proof of permanent damages, (Exhibit 47).

48. Galen proof of permanent harm, (Exhibit 48).

49. Galen proof of irreparable damages, (Exhibit 49).

50. Galen proof of irreparable harm, (Exhibit 50).

**DEFENDANTS' TRIAL PREPARATION ORDER, PART B COMPLIANCE:**

1. CLAIMS OF FACT PROPOSED FOR STIPULATION:

The defendants agree with the matters recited by the plaintiffs in their claims of fact proposed for stipulation, as set forth in section A, item 1.

2. PROPOSED FINDING OF FACTS AND EVIDENCE:

1) COMTA was at all times commencing and subsequent to December 2001 recognized by the United States Department of Education as an accrediting agency for educational institutions offering post-secondary coursework in massage therapy and bodywork programs, which lead to certificates, diplomas or degrees.
Testimony of Carol Ostendorf and letter from U.S. Secretary of Education, Rod Paige to Carole Ostendorf at COMTA.
**Plaintiff disagrees that defendants were recognized as claimed above and testimony by defendants as well as defendants documents will bear this out.**

2) For all relevant times, COMTA was, and is, a separate accrediting body which makes independent accrediting decisions, which are not influenced by the company which created it, the American Therapy Association (AMTA)
Testimony of Carole Ostendorf ,John Goss and/or Jan Schwartz and the AMTA – COMTA Agreement originally effective on March 1, 1997.
**Plaintiff disagrees that defendants are separate as claimed above in that filing and answer to this lawsuit did so in the name of COMTA. Other documents and testimony will bear this out.**

3) In August of 2001 the Galen Institute, LLC. submitted a written application for accreditation to the defendant, COMTA.
Testimony of James Lattanzio, Carole Ostendorf, Galen's application with cover letter from Jim Lattanzio dated August 17, 2001 and letter acknowledging receipt of the application from Steve Fridley to Jim Lattanzio dated September 21, 2001

21

**Plaintiff admits.**

4) At the time of the plaintiff Galen Institute's application for accreditation with COMTA, the defendant COMTA had in place a published set of "Policies, Procedures & Standards", which governed all aspects of the accreditation process.
Testimony of Carole Ostendorf, John Goss and/or Jan Schwartz and COMTA's "Polices, Procedures & Standards", including Appendixes A-D.
**Plaintiff admits, which is the basis for a contractual agreement between plaintiff and defendant and was basis what induced plaintiff to use defendant to provide service.**

5) In March 2001 when Jim Lattanzio attended an accreditation workshop sponsored by COMTA, he received a copy of COMTA's "Policies, Procedures & Standards". Revisions to the "Policies, Procedures & Standards" were sent to the Galen institute bi-annually.
Testimony of Carole Ostendorf, Jim Lattanzio and a copy of the "Policies, Procedures & Standards"
**Plaintiff admits, which is the basis for a contractual agreement between plaintiff and defendant and was basis what induced plaintiff to use defendant to provide service.**

6) The plaintiff Galen Institute's application process followed the policies and procedures set forth in COMTA's "Policies, Procedures & Standards", in so far as the application process progressed and required the submission of a second Self-Study Report by the Galen Institute, .
Testimony of Carole Ostendorf, John Goss and/or Jan Schwartz and COMTA's "Policies, Procedures & Standards", including Appendixes A-D and November 13, 2001 letter from Steve Fridley to Jim Lattanzio.
**Plaintiff admits.**

7) As a part of the accreditation process, on March 25 & 26, 2002 representatives of COMTA (Brenda Griffith, Dee Meux, Michelle Mich and Carole Ostendorf) conducted an onsite visit, at the Galen Institute's campus in Hartford, CT.
Testimony of Carole Ostendorf, James Lattanzio, Brenda Griffith, Dee Meux and/or Michelle Minch.
**Plaintiff admits**

8) The representatives of COMTA who participated in the onsite visit found numerous instances and means by which the Galen Institute failed to meet with applicable standards for accreditation.
Testimony of Carole Ostendorf, Brenda Griffith, Dee Meux and/or Michelle Minch, interview forms and surveys, attendance records, school catalogue and literature, notes of team members and other documents which were copied during the onsite visit. Also, COMTA's "Policies, Procedures & Standards", including Appendixes A-D and COMTA's "Onsite Team Report" with cover letter dated 4/1/02 from Carole Ostendorf to Jim Lattanzio.
**Plaintiff disagrees and represents that the so-called standards were not followed by COMTA representatives. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions. The testimony of Galen staff as listed in this section A 2(a)(3) above and the cross examination**

22

**of defendants witnesses will also bear out plaintiffs claim.**

9) During the Galen Institute application process, COMTA received information from a variety of sources, which raised concerns regarding the Galen Institute's ability to meet the applicable standards for accreditation.
December 2001 letter from Elina Slesinski to COMTA (and Mr. Lattanzio's response), documentation from file of Connecticut Dept. of Higher Education showing their evaluation visit to the Galen Institute revealed incomplete student records and students who did not complete the required hours, Testimony of Patricia Santoro of the Ct. Dept. of Higher Ed. and testimony of Carole Ostendorf.
**Plaintiff disagrees and represents that the so-called standards were not followed by COMTA representatives nor was the information properly verified by COMTA as promised. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions. The testimony of Galen staff and former students as listed in this section A 2(a)(1 through 7) above and the cross examination of defendants witnesses will also bear out plaintiffs claim.**

10) In October COMTA decided to defer the application of the Galen Institute for an additional six months, in order to allow the Galen Institute and Mr. Lattanzio further time to address issues raised by COMTA so "they [COMTA] can re-consider your school for accreditation."
Testimony of Carole Ostendorf, John Goss and/or Jan Schwartz , November 4, 2002 letter from Carole Ostendorf to Jim Lattanzio and COMTA's "Polices, Procedures & Standards", including Appendixes A-D.
**Plaintiffs agree in part as to deferral, however contends that COMTA had no legal authority to continue with the process once plaintiff terminated relationship with claims of fraud and breach. Furthermore defendants represented that if plaintiff did not settle balance due COMTA, defendant could not submit SSR to commission but did so anyway, dispite policy. The testimony of Galen staff listed in this section A 2(a)(1 through 7) above and the cross examination of defendants witnesses will also bear out plaintiffs claim.**

11) Ultimately, in April of 2003 COMTA denied the plaintiff Galen Institute's application for accreditation based upon numerous findings of the applicant's failure to meet the applicable standards and the applicant's failure to address significant issues raised by COMTA during the accreditation process.
Testimony of Carole Ostendorf, Jan Schwartz, Dr. John Goss and letter dated May 5, 2003 from Carole Ostendorf and Jan Schwartz to Jim Lattanzio.
**Plaintiff disagrees and represents that the so-called numerous findings were not failures but were the shortcomings of the COMTA visit, not following their own standards nor was the information properly verified by COMTA as promised. The plaintiff will present documents that show defendants responded to each and every so-called failure to which defendants blatantly ignored. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions. The testimony of Galen staff and former students as listed in this section A 2(a)(1 through 7) above and the cross examination of defendants witnesses will also bear out plaintiffs claim.**

23

12) For the first time on or about May 21, 2002, the plaintiff, James Lattanzio sought to have the application (for accreditation by COMTA) of the Galen Institute withdrawn with said withdrawal being denied by COMTA.
Testimony of Carole Ostendorf, James Lattanzio, the May 21, 2002 letter from Mr. Lattanzio to Carole Ostendorf and letter of June 4, 2001 from Ms. Ostendorf to Mr.Lattanzio.
**Plaintiff admits in part that application process was terminated by plaintiff and was refused by defendant. Plaintiff will present evidence in the form of plaintiff and defendant documents and exhibits that will refute defendants above assertions. The testimony of Galen staff as listed in this section A 2(a)(1 through 7) above and the cross examination of defendants witnesses will also bear out plaintiffs claim.**

13) The plaintiffs did not request to have Galen Institute's application for accreditation withdrawn until after the onsite visit was conducted by COMTA representatives. Testimony of Carole Ostendorf, James Lattanzio and the May 21, 2002 letter from Mr. Lattanzio to Carole Ostendorf.
**Plaintiff admits.**

14) COMTA's "Policies, Procedures & Standards" sets forth in section IV that any withdrawal of application must occur prior to an onsite visit. The pertinent section further sets forth that, "financial obligations for portions of the process completed must be met."
COMTA's "Policies, Procedures & Standards", including Appendixes A-D.
**Plaintiff admits.**

15) COMTA's "Policies, Procedures & Standards" sets forth in section V the appeals process to be taken following a denial of accreditation.
COMTA's "Policies, Procedures & Standards."
**Plaintiff admits**

16) At no time did the plaintiffs utilize or attempt to utilize the appeals process set forth in COMTA's "Policies, Procedures & Standards" set forth in section V. Testimony of Carole Ostendorf, John Goss and/or Jan Schwartz and James Lattanzio.
**Plaintiff admits**

17) Of the expenses borne by the defendants with regard to the onsite visit of March 25 & 26, 2002, the plaintiff only paid $2,000. of the $3,474.91 total expenses incurred.
COMTA invoice dated 5/7/2002.
**Plaintiff admits**

3. CLAIMS OF LAW:

   A. Counts One through Five: As to these Counts the Defendants contend that the legal theories and standards of liability proposed by Plaintiffs are inapplicable in this case. During all relevant times in this matter, the Defendant COMTA was an unincorporated association engaged in the setting of post secondary academic standards through its role as an accreditation body for schools of massage therapy under the Connecticut General Statutes. The individual defendant is the Executive Director of that organization. As pled

24

and stipulated by the parties, the State of Connecticut recognizes COMTA in this academic standards setting role, per C. G. S. sec. 20-206b(a)(1)(B). The legal standard to be applied to a private accreditation association is a question of first impression in Connecticut law. The question has a line of law going back to 1819 in Trustees of Dartmouth College v Woodward, 17 U.S. (4 Wheat) 518 (1819). This case seminally endorsed the concept of "academic freedom" to academic institutions in areas of decision-making tied to the academic mission. Later cases have extended to accrediting associations this rule of academic freedom from governmental intrusion, " . . . *the development and maintenance of educational standards are the responsibilities of nongovernmental, voluntary accrediting associations*", in re Nasson Coll. 80 B.R. 600 (Bankr D. Me 1988). On issues of discretion in the area of accreditation, the standard applied by the Courts has consistently been one of " arbitrary and capricious", not negligence or any other common law liability standard. Absent a finding of a decision made in an "arbitrary and capricious" fashion, Courts have deferred to accrediting associations as acting within their academic discretion; see: Wilfred Acad. Of Hair & Beauty Culture v S. Assn. of Colls. and Schs. 957 F.2d. 210 (5th Cir. 1992); and generally 90 KY. L. J. 329, NCAA V LASEGE AND JUDICIAL INTERVENTION IN EDUCAITONAL DECISIONS, Kentucky Law Journal 2001-02 Steinbach; 21 J.C. & U.L. 61, DUE PROCESS IN THE ACCREDITATION PROCESS, Journal of College and University Law, Summer 1994, Prarie and Chamberlain. The "arbitrary and capricious" standard has been explained as " . . . if an institution exercises is discretion in arbitrary or irrational fashion or in bad faith" Interfaith Medical Center v Sabiston, 136 A.D.2d. 238, 527 N.Y.S.2d 48 (N.Y. App Div, 1988)

**Plaintiff contends that its legal theories as grounds for relief as stated and enumerated within section A (3) above are proper in this case. Plaintiffs submit that defendants above defense claims of academic freedom do not apply to private businesses as the defendants are operating. In addition, within this State where defendants have actually participated in the "making of accreditation mandatory" by law, they are not afforded any voluntary status exemptions. Nor is the defendant an "institution" within the nature of the case law sited by defendants.**

B. Under the doctrine of "Primary Jurisdiction" this Court should refuse to hear this matter. Under one theory, the plaintiffs have voluntarily withdrawn their application before COMTA. Further, the plaintiffs have eschewed the review process COMTA provides in accreditation decisions. Additionally, the plaintiffs have not sought relief from either of the agencies with special competence in this area under the Connecticut General Statutes. These would be the Commissioner of Higher Education under whom all post secondary trade schools are regulated, and the Commissioner of Public Health under whom the specific accreditation of massage therapy schools falls. See Interfaith Medical, supra and Ajello v. Hartford Federal Svgs. & Loan, 32 Conn. Sup. 198 (Conn. Super 1975).

**Plaitniff disagrees and submits that jurisdiction is proper based on diversity. In addition, no relief by statute or authority can be granted from the State agencies as referenced above for the acts of the defendnats.**

C. As to Count six conversion by trover, the cases cited by the plaintiffs are respectively the breach of a gravel mining agreement and a vending machine dispute. Plaintiffs cite no

25

cases for the proposition that Connecticut recognizes a property right encompassing trover in materials prepared and submitted to an accrediting association for academic accreditation purposes. Defendants assert that there are no such cases and no such Connecticut law.

**Plaintiff contends that its legal theories as grounds for relief as stated and enumerated within section A (3) for the above count are proper in this case.**

D. As to Count seven violation of CUTPA, the case cited by plaintiffs relates to breach of warranty in the sale of an automobile. Plaintiffs cite no cases for the proposition that CUTPA encompasses the activities of an unincorporated academic accrediting association, with respect to its accrediting activities under Connecticut statutes.

**Plaintiff contends that its legal theories as grounds for relief as stated and enumerated within section A (3) for the above count are proper in this case. Plaintiff further submits that defendant, if claiming any exemption under C.U.P.T.A. has the burden of proof as to that exemption and that defendant has not presented such and therefore is not entitled to claim such at this point.**

E. Defendants have no idea what "special relief" the plaintiffs are seeking under the cited case, a matter of legal malpractice, but would contend that any such "special relief" is inapposite to this case.

**Plaintiff contends that special relief is proper given the destructive nature of what has occurred to plaintiff and Galen Institute and contends that its legal theories as grounds for relief as stated and enumerated within section A (3) for the above count are proper in this case.**

F. Defendants take the position that the Executive Director is improperly named in her "individual" capacity, as there can be no such "individual" finding against her in the context of the allegations of this case.

**Plaintiff contends that the naming of this defendant is proper given the nature of the non-business entity claim and the fact that the parent company, AMTA only came forward in February 2004 with such disclosure. Defendant Ostendorf is a party within the meaning of F.R.Civ.P 19 and as such should remain such.**

**Plaintiffs NOTE: Defendant has had almost two years to raise any and all of these above defenses as dispositive and has failed to do so and therefore should be precluded at this time from doing so.**

4. <u>LIST OF DEFENDANTS' PROPOSED EXHIBITS:</u>

A. Letter from U.S. Secretary of Education, Rod Paige to Carole Ostendorf at COMTA.

**Plaintiffs object as hearsay.**

B. AMTA/COMTA Agreement originally filed on March 1, 1997.

26

**Plaintiffs object as hearsay.**

C.  Galen's application with cover letter from Jim Lattanzio dated August 17, 2001.

   **Plaintiffs no objection.**

D.  September 21, 2001 letter from Steve Fridley to Jim Lattanzio.

   **Plaintiffs no objection..**

E   COMTA's Policies, Procedures & Standards, including Appendixes A-D.

   **Plaintiffs no objection.**

F.  November 13, 2001 letter from Steve Fridley to Jim Lattanzio.

   **Plaintiffs no objection.**

G.  Interview forms and surveys copied during the onsite visit.

   **Plaintiffs no position until it is determined to which "interview forms and surveys" defendants are refering.**

H.  Attendance records copied at the onsite visit.

   **Plaintiffs no objection.**

I.  School catalogue and literature copied at the onsite visit.

   **Plaintiffs no objection.**

J.  Team members notes and miscellaneous documents copied at the onsite visit.

   **No position until plaintiffs analyze contents of "notes and miscellaneous documents" copied at the onsite visit**

K.  COMTA's onsite team report with cover letter dated 4/01/02 from Carole Ostendorf to Jim Lattanzio.

   **Plaintiffs no objection, assuming proper authentication and foundation laid.**

L.  December 2001 letter from Elina Slesinki to COMTA.

27

**Plaintiffs objection hearsay.**

M.  December 18, 2001 letter from Jim Lattanzio to Steve Fridley.

**Plaintiffs no objection.**

N.  Documentation from the State of Connecticut Department of Higher Education.

**Plaintiffs objection hearsay.**

O.  November 4, 2002 letter from Carole Ostendorf to Jim Lattanzio.

**Plaintiffs no objection.**

P.  May 5, 2003 letter from Carole Ostendorf and Jan Schwartz to Jim Lattanzio.

**Plaintiffs no objection.**

Q.  May 21, 2002 letter from Jim Lattanzio to Carole Ostendorf.

**Plaintiffs no objection.**

R.  June 4, 2002 letter from Carole Ostendorf to Jim Lattanzio.

**Plaintiffs no objection.**

S.  COMTA invoice dated 5/7/02.

**Plaintiffs no objection.**

5.  LIST OF ALL WITNESSES:

CAROLE OSTENDORF: Ms. Ostendorf will testify regarding her extensive dealings with Mr. Lattanzio and the accreditation process the Galen Institute went through. As the team leader of the onsite visit team, she will also testify as to her observations, discussions and information gathering which took place at the onsite visit. As Executive Director of COMTA, she is also familiar with and will testify to the general procedures and policies of COMTA and the manner in which COMTA approaches the accreditation process with respect to institutions seeking accreditation.

JAN SCHWARTZ & JOHN GOSS: As members of the COMTA Commission these individuals will testify about the COMTA review process in general and the review of the Galen Institute specifically. This testimony is not focused at direct contact with representatives of Galen, but rather on the review process accomplished by COMTA. It is assumed Dr. Goss will be testifying, however, the defendants give notice of Jan Schwartz should Dr. Goss be unavailable.

28

PATRICIA SANTORO: Ms. Santoro will testify as to findings made by the Department of Higher Education regarding issues raised in early 2002 as to attendance of students at the Galen Institute not meeting the number hour hours advertised by the Galen Institute or required.

BRENDA GRIFFITH, DEE MEUX AND/OR MICHELLE MINCH: Will testify as to their observations and findings while conducting the onsite visit on March 25 & 26, 2002.

6. DISPUTED EVIDENCE

A) As to plaintiff's listed exhibits #5, 6, 8, 9, 13, 14, 17, 21, 23, 26, 27, 29-35 & 39-50, the defendants cannot form an opinion as to possible disputes regarding the admissibility of the numbered documents. Based upon the plaintiff's description of them, the defendant is uncertain as to what those documents are, as none have been produced by the plaintiff during the discovery process.
**Plaintiffs submit that most of the documents and evidence as referenced in plaintiffs list is in the possession of the defendants.**

B) As to the testimony of the several witnesses listed by the plaintiff, as the description of each witnesses testimony is so brief and general, the defendant's cannot forma meaningful opinion as to possible evidentiary issues related o each witness.
**Plaintiffs submit that all of the witnesses as referenced in plaintiffs list are and have been known to the defendants all along, except for the expert.**

C) As to Chris Folker as an expert witness. The defendants object to any expert witness testimony as the plaintiff has failed to disclose the identity or grounds of any expert testimony prior to the submission of this Trial Preparation Memorandum. This despite the Court's most recent order related o discovery in this case, of May 20, 2003 (with regards to the "Join Motion for Extension of Time to Complete Discovery" dated May 11, 2003). The Court's order in that regard was that all discovery was to be completed by September 19, 2003. The disclosure of Mr. Folker at this late date is contrary to F.R.C.P. 26(a)(2)(C), in that it is both beyond the date for disclosure set by this Court and is well within 90 days of the date the case is to be ready for trial. Further, the disclosure not being accompanied by any type of report, is contrary to F.R.C.P. 26(a)(2)(B). Based upon lack of disclosure and lack of providing the required report the plaintiff's expert should be barred from testifying. Samos Imex v. Nextel Communications, Inc., 194 F.3d 301, 304-05 (1st Cir. 1999) and Industrial Hard Chrome, Ltd. V. Hetran, Inc., 92 F.Supp.2d 786 (N.D.Ill. 2000).
**The plaintiffs submit that in September defendants were notified that a default motion was going to be filed, which subsequently was filed and granted followed by a judgment upon said default, which was also granted. Defendants were in fact in default and not due any discovery. Defendants then waited until the business day before the hearing in damages to come forward with "tails of woe," and motions to vacate and set aside the default and judgment, which this Court in plaintiff's opinion reluctantly granted. Now defendant claims they did not receive any discovery at all. The defendants want to set back the clock,**

29

**without taking any responsibility. The plaintiff has also brought to the attention of this Court the misuse of what information plaintiffs have disclosed to the defendant outside this matter and has moved for a protective order to preclude this from reoccurring. Defendants have filed no motions addressing this lack of discovery except one claiming that when they depose plaintiff Lattanzio defendants will promptly file motion for summary judgment, which they never did. Any lack of discovery is at defendant's hands and they should not be rewarded as such.**

D) As to plaintiff's evidence setting forth damages, the defendant will be objecting to any evidence of any damages beyond amounts billed directly from COMTA (the application fee and costs billed for the onsite visit). This position is based upon the plaintiff's failure to fully respond to outstanding discovery requests for this material (following the filing of a Motion to Compel) and the plaintiff's failure to file a damages analysis which was due no later than September 19, 2003, per the Court's order of May 20, 2003. Disallowance of any such evidence is consistent with F.R.C.P. 37(b)(2)(B) and 37(c)(1). See <u>Update Art, Inc. v. Modiin Pub. Ltd.</u>, 843 F.2d 67 (1988) and <u>Trost v. Trek Bicycle Corp.</u>, 162 F.3d 1004, 1008 (8th Cir. 1998).
   **Plaintiffs submit that damages are proper and should not be limited based on the above claims of the defendant and as briefed in plaintiffs reply to defendants paragraph C above.**

30

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GALEN INSTITUTE, LLC, and JIM LATTANZIO<br>          Plaintiff | :<br>:  CASE NUMBER:<br>:  3:02CV1232-PCD<br>: |
| vs. | :<br>:  PLAINTIFFS TRIAL |
| COMTA, Commission on Massage Therapy Accreditation and CAROLE OSTENDORF, Individually and as Executive Director of COMTA<br>          Defendant. | :  PREPARATION ORDER<br><br>   APRIL 09, 2004 |

## SECTION C TRIAL PREPARATION ORDER COMPLIANCE

Attorneys who will try the case:

Plaintiffs:   Thomas A. Amato
              357 East Center Street
              Manchester, CT 06044
              (860) 623-0318

Defendants:   Royce Vehslage
              Genovese, Vehslage & Chapman
              500 Enterprise Drive
              Rocky Hill, CT 06067
              (860) 513-3760

This case is to be tried to the court.

Estimated length of time for Plaintiff's case is 3-4 days.

Estimated length of time for defendant's case is 1-2 days.

The parties do agree to have the case tried by United States Magistrate Judge Joan G. Margolis.

Further proceedings prior to trial: The plaintiff's have filed a stipulated motion for protective order precluding the defendants from using any further information disclosed by plaintiff outside this matter with any non party, against the plaintiffs.

Further proceedings prior to trial: The defendant's recently filed a motion to preclude testimony by an expert 'disclosed' by the plaintiff's on March 19, 2004 and to preclude documentary evidence sought to be put forward at trial which has not been disclosed to the defendants.

31


DEFENDANTS
COMTA, ET AL.,

By: _____
Royce L. Vehslage
Federal Bar #18006
Genovese, Vehslage & Chapman
500 Enterprise Drive
Rocky Hill, CT 06067
(860)513-3760

PLAINTIFF
GALEN INSTITUTE, LLC

By: _____
Thomas A. Amato
357 Center Street
Manchester, CT 06040
Federal Bar #14221

PLAINTIFF
JIM LATTANZIO, PRO SE

By: _____
Jim Lattanzio
Galen Institute, LLC
1025 Silas Deane Highway
Wethersfield, CT 06109
(860) 721-1904

## CERTIFICATION

This is to certify that a copy of the foregoing was faxed, e-mailed and mailed, postage prepaid, this 12th day of April, 2004, to the following counsel of record and pro se parties:

    Attorneys for Plaintiffs, Galen Institute
    Thomas Amato
    357 East Center Street
    Manchester, CT 06040

    Jim Lattanzio, Pro Se
    Galen Institute
    1025 Silas Deane Highway
    Wethersfield, CT 06109

_____
Royce L. Vehslage

32