FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2005 MAR 14  P 2: 39

U.S. DISTRICT COURT
NEW HAVEN CT

| | |
|---|---|
| GALEN INSTITUTE, LLC, at al ) | CASE NO. 3:02-CV-1232 (PCD) |
| ) | |
| v.                                             ) | PLAINTIFF'S OBJECTION TO |
| ) | DEFENDANTS MOTION FOR |
| ) | 60 DAY EXTENSION TO THE |
| COMTA                                    ) | TRIAL EXPOSURE DATE |
| ) | |
| ) | MARCH 11, 2005 |

Plaintiff Lattanzio objects to defense's motion for a 60 day extension of time to the point at which this Court once again notices parties to be ready for trial:

1. In February 2004, this Court "reopened a default" and "vacated a judgment" in part, based on representation that the defendants "had a merit defense and were ready to present it."

2. In a sanction hearing in March 2004, Judge Dorsey <u>ordered</u> both parties to be "<u>ready for trial</u>" and further <u>ordered</u> "<u>no more motions, no more extensions</u> and "<u>no more amendments or joining in of parties.</u>"

3. Plaintiffs have complied with those orders (paragraph 2), defendants have not.

4. Defendants were then given ample time by this Court to prepare for trial.

5. In October 2004 this Court issued a trial notice and set an Oct. 23 trial date, to which plaintiffs were ready for trial and defendants were not, requesting a delay.

6. In November 2004, defendants represented to plaintiffs that they had an "attractive settlement offer" and if plaintiffs would stay this case they would present it, to which plaintiff did stay the matter until January 01, 2005.

7. Defendants "more attractive" offer was that **plaintiff pay defendants $50,000**, defendants further represented that they "defendants" would cost plaintiff "so much

money" that plaintiff would "hurt" and not want to pursue case. (This plaintiff has this statement on a tape recording).

8. The new defense counsel took this case on or about January 2005, and has now waited until another trial notice was sent "March" to request an extension.

9. The defense law firm has assigned <u>two</u> lawyers to this case (two appearances), as such a "vacation" of one counsel the week of March 14 certainly does not warrant a 60-day extension to the trial notice date.

10. If in fact, defendants had, back in February 2004 a <u>defense</u>, then their new law firm should be able to reasonably present it.

11. <u>Defense counsel in their motion for extension has misled this Court</u>.

12. In paragraph two of the extension motion, counsel <u>falsely</u> represents to this Court that plaintiff filed a "related action" and "<u>both</u> cases concern related issues/allegations" and "<u>both</u> will depend on <u>many</u>, if not all of the same witnesses, who are all located out of state."

13. The above paragraph 10, statements made by defense counsel to this Court are <u>not true</u> and they know it.

14. Plaintiff Lattanzio's new lawsuit (Lattanzio is only plaintiff) contains NO related issues or allegations, (Copy of new complaint enclosed, Exhibit A).

15. The AMTA and Corole Ostendorf (<u>two</u> of the twelve defendants), NOT "<u>many if not all</u>" as defense counsel has represented.

16. <u>One</u> witness, (Carole Ostendorf) NOT "<u>all</u>" may be used in both cases.

17. Three of the twelve defendants in Lattanzio's new suit live in Connecticut, NOT like defense counsel falsely represented "<u>who are **all** located out of state</u>."

2

18. Ten of the twelve new defendants have not even been served as of yet, which if combined would extend this case out another several years.

19. All of the above false representations to this Court by defense counsel constitute a fraud upon this Court, to intentionally delay.

20. Each time this Court sets trial dates, plaintiffs have to incur costs and expenses in meeting with legal counsel, which is defense's plan.

Wherefore, as defense counsel has <u>ignored</u> Judge Dorsey's order regarding "extensions," this Court should deny this request. As further grounds for the denial of an extension, is defense counsel having submitted knowingly false information to this Court as legitimate reasons for needing an extension.

By, Plaintiff:<br>
JAMES LATTANZIO pro se<br>
<i>/s/ James Lattanzio</i><br>
c/o Galen Institute<br>
1025 Silas Deane Hwy<br>
Wethersfield, CT 06109<br>
860.721.1904

## CERTIFICATION OF SERVICE

This is to certify that on March 11, 2005 via U.S. first class postage paid, the above motion was served upon to the following parties:

Wilson, Elser, Moskowitz, Elderman & Dicker, LLP
One Stamford Plaza
263 Tresser Blvd. 9th FL
Stamford, CT 06901
Atten: Brian Del Gatto, Esq.

Thomas A. Amato
357 East Center Street
Manchester, CT 06040

Plaintiff,<br>
JAMES LATTANZIO pro se<br>
<i>/s/ James Lattanzio</i>

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Filed Feb 9, 05
Bridgeport Fed Court

| | | |
|---|---|---|
| James Lattanzio | ) | No. 305CV82 (JCH) |
| Plaintiff | ) | |
| vs. | ) | |
| American Massage Therapy Association, Inc. | ) | |
| Elizabeth Lucas, individually | ) | |
| The Commission On Massage Therapy Accreditation, Inc. | ) | AMENDED |
| Carole Ostendorf, Individually | ) | |
| Schiff, Hardin, Wait, LLP, (a Law Firm) | ) | CIVIL |
| Vehslage, Chapman, Cartier, (a Law Firm) | ) | |
| Robert Armstrong, attorney at Law | ) | COMPLAINT |
| Thomas P. White, attorney at Law | ) | |
| Jeanette Zimmer, attorney at Law | ) | |
| Kathryn D. Zalewski, attorney at Law | ) | |
| Gregory Curtin, attorney at Law | ) | |
| Royce L. Vehslage, attorney at Law | ) | |
| Defendants | ) | FEBRUARY 09, 2005 |

## NATURE OF ACTION

1. The plaintiff James Lattanzio brings this <u>amended</u> Civil Complaint to redress injuries that he has suffered and continues to suffer as a direct result of the Defendants' intentional, wanton, reckless, malicious and tortious acts of; 1. Vexatious Litigation, in, intentionally perpetrating a "Fraud upon a United States Federal District Court," "Fraud upon the United States Patent and Trademark Office, (hereinafter USPTO)" "Subornation of Perjury," "Witness Tampering," "Abuse of Civil Process" and "Violating the Cannon of Ethics." 2. Civil Conspiracy pertaining to item 1 above. 3. Aiding and Abetting pertaining to item 1 and 2 above. 4. Legal Malpractice. 5.

1

Violations of "The Connecticut Unfair Trade Practices Act, CUTPA." 6. Violations of the Illinois Unfair Trade Act. 7. Defamation. 8. Intentional infliction of emotional harm. 9. Negligence. 10. Gross Negligence and 11. Common Law Unfair Competition.

## PARTIES

2. The one (1) plaintiff, Jim Lattanzio is an individual with his principal residence in Windham and principal place of business Connecticut;

3. The twelve (12) defendants' 1. "American Massage Therapy Association, Inc.," (hereinafter AMTA) is a Delaware Corporation having its principal place of operation in Evanston, Illinois. 2. Elizabeth Lucas, individually, the executive director of AMTA. 3. "The Commission On Massage Therapy Accreditation, Inc.," (hereinafter TCOMTA) is an Illinois Corporation having its principal place of operation in Evanston, Illinois. 4. Carole Ostendorf, individually, former executive director and corporate agent of TCOMTA. 5. Schiff, Hardin, Wait, LLP, (hereinafter SHW) is a law firm partnership having its principal place of operation in Chicago, Illinois. 6. Vehslage, Chapman, Cartier, (hereinafter VCC) is a law firm having its principal place of operation in Rocky Hill, Connecticut. 7. Robert Armstrong, individually, (hereinafter Armstrong) is an attorney at law having his principal place of business in Chicago, Illinois and is now a former associate at defendant SHW. 8. Thomas P. White, individually, (hereinafter White) is an attorney at law at the defendant law firm SHW, having his principal place of business in Chicago, Illinois. 9. Jeanette Zimmer, individually, (hereinafter Zimmer) is an attorney at law at the defendant law firm SHW, having her principal place of business in Chicago, Illinois. 10. Kathryn D.

2

Zalewski, (hereinafter Zalewski) is an attorney at law at the defendant law firm SHW, having her principal place of business in Chicago, Illinois. 11. Gregory Curtin, (hereinafter Curtin) is an attorney at law having his principal place of business in New Haven, Connecticut. 12. Royce L. Vehslage is an attorney at law and a partner of the defendant law firm VCC, in Rocky Hill Connecticut.

## JURISDICTION AND VENUE

4. Jurisdiction for this case to be heard in this U.S. District Court is founded on Diversity of Citizenship of the parties as is set forth in the above paragraphs 1, 2 and 3. The matter in controversy exceeds, exclusive of interest and costs, the sums specified by 28USC §1332. The additional Connecticut and Illinois State tort claims should also be heard in this Federal Court under pendent jurisdiction.

## HISTORY

5. On July 18, 2002 this plaintiff individually (pro se) and as general member of the business Galen Institute Llc, filed a law suit (case no. 3: 02CV1232 PCD) in U.S. Federal Court in the District of Connecticut against what I was led to believe was a legally operating business named Commission On Massage Therapy Accreditation, (COMTA) and Carole Ostendorf.

6. This entity, COMTA when sued, secured legal council, the defendant law firm VCC, which filed an appearance and an answer in the name of COMTA. It was subsequently disclosed, by defendant AMTA, only after being defaulted for failure to disclose, that this entity COMTA was a fictitious, non registered business being operated by defendant AMTA.

3

7. The July 18 law suit is still awaiting trial, and has been plagued by delays determined by the presiding Court to be "mostly" caused by the defendants and their counsel, attorney Royce Vehslage of defendant law firm VCC. Defense counsel in that matter at one point was sanctioned for such conduct.

8. In October 2004, the Court issued a "24 hour trial notice." On October 18, the scheduling clerk gave parties notice of trail scheduled on October 25. Counsel for defendants then stalled for additional time and the case still awaits a trial date.

9. In July 2002, Galen Institute Llc, was accredited by the Council Overseeing Medical and Massage Therapy Accreditation, an agency legally formed by Mr. Terrance Jacob and as such in September 2002, Galen Institute, in an advertising brochure announced that Galen had received accreditation by the Council Overseeing Medical and Massage Therapy Accreditation, using just the acronym "COMMTA" in the advertising brochure.

10. Upon plaintiffs' information and belief the above paragraph 9, (that Galen was accredited by COMMTA) was then transmitted to defendant's AMTA, Lucas, by their AMTA agents in Connecticut.

11. Upon information and belief on or about October 2002, defendant's AMTA, Lucas, its corporate attorney, defendant Armstrong, along with defendant's SHW, White, Zimmer and Zalewski, conspired and plotted to and did create an ongoing "plan" to attack plaintiff personally and through the business Galen Institute in retaliation and as leverage for the July 2002 law suit filed against COMTA.

12. Upon information and belief, this intentional "plan" was solely for retaliation against this plaintiff for filing his lawsuit in July 2002 and would be directed at Galen Institute for using the acronym COMMTA in the brochure advertisement.

13. On or about November 12, 2002 defendants AMTA, Lucas, its corporate attorney defendant Armstrong, along with defendant's SHW, White, Zimmer and Zalewski, after having planned the act, began to carry out their "plan" by first making fraudulent application to the USPTO to register as a "typed certification mark " COMTA.

14. Said application to the USPTO contained knowingly false information and said application was designed and the information supplied by AMTA, Lucas and its legal counsel's defendant Armstrong, along with defendant's SHW, White, Zimmer and Zalewski so that the trade examiner would most likely pass it along for registration.

15. The defendant SHW, (a trademark law firm) knew that the USPTO examiner would accept "statements of use" and not documented evidence so this act of fraud was carried out by knowingly omitting facts in the USPTO application about the actual uses of the unregistered fictitious business name COMTA by AMTA that was inconsistent to being used as and being registerable as a certification mark.

16. The above was intentionally done so that defendants AMTA could create and bring a "legitimate looking" legal action against the business Galen Institute for its use of COMMTA based on prima-facie, once said mark (COMTA) was in fact fraudulently registered with the USPTO.

17. Defendants knew that this would also be an attack on this plaintiff as the defendant SHW who specialized in intellectual property rights and trademark law knew or should have known that this registration was improper and constituted fraud.

18. Upon information and belief defendant AMTA had used the unregistered business name COMTA since 1992 and had never taken any legal steps or precautions prior to 2002 (ten years) to protect the so called fictitious name.

19. Upon information and belief AMTA had been using the name COMTA in business since 1992 not in compliance with the corporation laws of Delaware and Illinois.

20. Upon information and belief the laws in both states Delaware and Illinois requires that all corporations do business in the "exact name" as they were incorporated under and that any use of a "fictitious or assumed" name by any corporation (such as the use of COMTA by AMTA) must be registered in the state as such or the corporation must state clearly when ever using said name conducting business that it as a d/b/a of the legal corporation, which AMTA has never done.

21. Defendant AMTA and Lucas failed to register or use the term d/b/a/ when using COMTA because upon information and belief this disclosure by AMTA would obvious preclude the (dual use) registration of said business name as a certification mark.

22. The defendant's Armstrong as well as defendants SHW, White, Zimmer and Zalewski knew or should have known how business trade names must be legally used and at all times herein, AMTA had what should be assumed competent legal representation in all of the matters expounded upon herein this complaint.

23. Upon information and belief on or about June or July 2003, defendant Curtin of the law firm defendant VCC representing COMTA in this plaintiff's 2002 lawsuit in Connecticut at the instructions of defendant's AMTA, Lucas and Armstrong, did

communicate via phone and conduct an in person interview of one Terrance Jacob, (hereinafter Jacob).

24. During said communications, (paragraph 23) Jacob represented repeatedly to Curtin that he (Jacob) had in fact formed his business and filed with the Secretary of the State of Connecticut, articles of organization and legally formed the Council Overseeing Medical and Massage Therapy Accreditation, Llc.

25. Jacob also informed Curtin that he (Jacob) formed another Connecticut Llc called Commission On Massage Therapy Accreditation.

26. Upon information and belief defendants AMTA, Lucas, Armstrong, along with defendant's SHW and White intentionally instructed Curtin and VCC to not only gather or create fictitious information from Jacob so that said information could be intentionally used to attack this plaintiff through Galen Institute but if needed to bribe Jacob as well.

27. On information and belief defendants AMTA, Lucas, Armstrong, SHW, White, VCC and Curtin offered Jacob employment with AMTA contingent upon him providing known to be false testimony that "it was this plaintiff" and not Jacob that formed the Connecticut Llc, COMMTA to make any claims of such against this plaintiff "stick."

28. Defendants AMTA and TCOMTA would later disclose Jacob as a primary witness (giving testimony as to the creation of COMMTA) in their phony law suit against this plaintiff with defendants AMTA, TCOMTA, Armstrong, SHW, White, Zimmer, Zalewski, VCC and Curtin all in on the conspiracy to suborn Jacob to provide false testimony (perjury).

7

29. Defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW, White, Zimmer, Zalewski, VCC, Vehslage and Curtin further conspired to knowingly and intentionally use said false testimony in Federal Courts to discredit this plaintiff and to derail the 2002 law suit filed against COMTA by this plaintiff.

30. Defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW, White, Zimmer, Zalewski, VCC, Vehslage and Curtin had also obtained with the aid of AMTA/TCOMTA's Connecticut member school's Connecticut Center for Massage, (Stephen Kitts, owner) law firm, certified copies of Jacob's articles of organizations from the Secretary of the State of Connecticut, clearly indicating that Jacob not this plaintiff legally formed his businesses.

31. Defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW, White, Zimmer, Zalewski, VCC, Vehslage and Curtin communicated daily had many "meetings of the minds" via, phone, fax and internet and then over several years did continually act upon such on almost a day to day basis in carrying out these acts and their intentional "plan to wrongfully attack this plaintiff."

32. In July 2003, this plaintiff had enclosed in a joint advertisement "a one page letter" announcing the formation of a new "association" specifically formed in part by this plaintiff along with other educators and school owners, for the benefits of "occupational school owners," called the "National Organization for the Advancement of Massage, Schools and Educators, (NOAMSE).

33. The (paragraph 23) "letter" was enclosed within a mail out that was solely done by the Council Overseeing Medical and Massage Therapy Accreditation, which had

8

been previously assumed by one Chris Folkers in November 2002, and moved to Kansas on or about November 2002, where the mail out was sent from.

34. Said plaintiffs one page advertisement letter also announced in one short paragraph, the operation of Folkers agency by using its full name "Council Overseeing Medical and Massage Therapy Accreditation" and then an acronym COMMTA.

35. Upon information and belief and within one week of the July 05 mail out, plaintiff's letter along with Folkers information were transmitted to defendant AMATA by several agents of AMTA one such being George Kousaleos, owner of the school Core Institute, FL. a member of AMTA and an owner of TCOMTA, Inc.

36. On or about mid July 2003, a facsimile was sent to the office of Galen Institute Llc from the defendant law firm of SHW, signed by defendant White.

37. Said SHW letter (paragraph 36) accused both (Mr. Folkers) and this plaintiff of "illegal acts" in the form of defamation, trade mark, trade name and certification mark infringement.

38. The SHW letter stated that the defendant law firm SHW "represented the business COMTA, which owned the certification mark COMTA."

39. The SHW letter also stated that this plaintiff was violating the Federal Lanham Act.

40. The SHW letter also clearly stated that this plaintiff's June 2003 letter contained "false statements regarding his client COMTA" (which was part of AMTA), which plaintiff's letter had no such statements.

41. The SHW letter also accused this plaintiff of "illegally" using trade names and certification marks COMMTA and Council Overseeing Medical and Massage Therapy Accreditation to identify this plaintiff's new accreditation agency (Council

9

Overseeing Medical and Massage Therapy Accreditation), which this plaintiff had no connection to.

42. The letter also stated that plaintiff's letter contained numerous statements (regarding AMTA) that were false and defamatory, which said letter did not.

43. This one page letter fax then mailed communication from SHW was knowingly double addressed to this plaintiff and Mr. Folkers and then faxed to a public area at Galen Institute, for any and all to see, read and then form unfounded and negative opinions of this plaintiff.

44. The defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW, White knew that this (faxing) act was intentional so others to see, to disparage the name of this plaintiff with Mr. Folkers and any other staff at Galen Institute who happen to see it.

45. The defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW and White did then conspire to and cause to have been placed on the front page of the defendant TCOMTA's web site (for over two months) a disparaging statement regarding the plaintiff and his association NOAMSE then AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW and White for its known 50,000+ members, public and national officials to view and intentionally refused to remove or retract said statements when it was demanded of them to immediately do so by this plaintiff.

46. Mr. Folkers denied all claims and filed his own law suit in August 2003 claiming defamation.

47. Said action is still pending surviving a motion to dismiss filed by the defendant AMTA with the Judge in that matter ruling that the defamation of Folkers had in fact occurred.

48. On September 26, 2003 defendants AMTA filed a law suit in U.S. Federal Court in the Northern District of Illinois.

49. Said law suit named this plaintiff individually and Mr. Folkers d/b/a Council Overseeing Medical and Massage Therapy Accreditation.

50. The suit alleged that this plaintiff "adopted" the certification marks COMMTA and commission overseeing Medical and Massage Therapy Accreditation.

51. The suit further alleged that this plaintiff "participated" with Folkers in the <u>creation</u> and promotion of COMMTA and Commission Overseeing Medical and Massage Therapy Accreditation and or has contributed to Folkers infringement and other violations.

52. The suit further alleged that this plaintiff "actively participated and assisted" defendant Folkers in the <u>formation</u> and the operation of COMMTA.

53. The suit further alleged that this plaintiff stated in his advertising letter that "COMTA accreditation program forces schools to adopt artificial standards," "That AMTA/COMTA do nothing that is in the best interest of schools."

54. The suit further alleged that this plaintiff "selected confusing similar names and certification marks for their accreditation program."

55. The suit further alleges that this plaintiff is "attempting" to "trade" on the "valuable good will associated with AMTA's alleged certification marks."

56. All of the above statements made by defendants AMTA, SHW and White as pled in the law suit are false and known to be false by all of the defendants.

57. Upon information and belief the defendants AMTA, Lucas, TCOMTA, Ostendorf, SHW, Armstrong, White had plans to "spring" a similar and baseless law suit

"ambush stile" on the plaintiff, once the registration of the mark COMTA was complete, however the unknown entering of Folkers into the picture, derailed this initial conspiracy and law suit plan.

58. Upon information and belief the defendants AMTA, Lucas, SHW, Armstrong and White then conspired, met, discussed, exchanged information and quickly formulated and then enacted this new revised "plot" to wrongfully attack this plaintiff.

59. Upon information and belief these acts were perpetrated in concert with full knowledge and participation of ALL defendants with the intention and by design to attack this plaintiff as pure retaliation for the law suit this plaintiff legitimately filed against the defendants AMTA's COMTA in July 2002.

60. The above acts were intentionally committed to the detriment of this plaintiff.

61. The defendants SHW, Armstrong, White all lawyers, knew perfectly well by the "Unusual Local Rules" employed in the Northern District of Illinois of the "financial burden" bringing a Federal law suit within that district would impose on this plaintiff individually and conveyed such a "strategy" to defendants AMTA, all of which defendants AMTA, Lucas, SHW, Armstrong, White met, discussed, approved and then implemented to the ultimate detriment and continued detriment to this plaintiff.

62. The defendants AMTA, SHW, Armstrong, White knew that if they could cause this plaintiff several hundred thousand dollars in legal costs, (which they have since claimed and demanded $250,000) and claiming $400,000 dollars in actual damages (which they have claimed but have failed to supply any analysis of), that this plaintiff would most likely be financially destroyed or ruined in just defending their law suit and thus would not be able to or have the desire to fight defendants in his

12

Connecticut law suit, which was disclosed to this plaintiff by defendant White, in a canted recorded phone conversation between plaintiff, White and Folkers in December 2004.

63. Upon information and belief ALL defendants agreed to and were kept in an "information loop," made fully aware of each step so that all aspects and bases of the acts as enumerated within this complaint could be carried out and that each other defendant could "cover the backs" of the others.

64. This was done via a very tight almost day by day communication process, using telephones, facsimiles and internet email in respect to this plan to attack this defendant.

65. Upon information and belief the defendants also consorted too and enlisted several member schools of the defendants AMTA and then also consorted too and enlisted several "owners in interest" schools of TCOMTA to aid and abet by providing knowingly false and deceptive information to support defendant's claims and in furtherance of carrying out defendants plot.

66. This was intentionally done to the detriment of this plaintiff.

67. Defendants were able to somewhat effectively carry out this plan and perpetrate the fraud upon a Federal Court and the USPTO in part because of this plaintiff's financial inability to fight effectively, especially in Chicago Illinois.

68. This financial inability of this plaintiff was directly caused by and is the primary reason this plaintiff filed a law suit against the defendant AMTA/COMTA in the first place.