69. In furtherance of the above acts and the fraud upon the Court defendants AMTA, Lucas, TCOMTA, Ostendorf, SHW, Armstrong, White, Zimmer and Zelewski intentionally and knowingly continued to supply the Federal Court through pleadings and motions knowingly false information and or false statements to support and continue the case along with defendants AMTA, TCOMTA, SHW, Armstrong, White, Zimmer and Zelewski intentionally and knowingly omitting pertinent truthful facts from the Federal Court during their case which would prove detrimental to the case.

70. Upon information and belief All defendants were continuously provided with copies of all pleadings and motions for their review and or the addition of other knowingly false information and or false statements to support and continue the wrongful acts.

71. Upon information and belief the above acts were also carried out and "orchestrated" by defendant Armstrong, aided and abetted by SHW and White for AMTA and TCOMTA in a further attempt to derail and/or to provide some leverage wrongfully against this plaintiffs Connecticut case.

72. Upon information and belief continuously during this matter any information that would expose defendants plan was intentionally kept from the Courts and this plaintiff.

73. When this plaintiff requested disclosure of damages and costs that were claimed in this new lawsuit, it was refused, along with knowingly false communications made exparte directly to the Court by defendant Zalewsky, to further bolster their case.

74. When this plaintiff subpoenaed witnesses to depose (at his cost) (said witness listed and disclosed by the defendants in their case), meritless motions to quash and for protective orders were promptly filed in Connecticut and Illinois and granted, for the

most part due to the "Unusual Local Rules" in the Illinois district and misrepresentations to the Connecticut Federal Court.

75. One said witness (their witness!) of paramount importance was one Terrance Jacob (Jacob referenced in above paragraphs).

76. Upon information and belief defendant White, Zimmer and Zelewski made knowingly false representations regarding the specific issues directly to the presiding Judge or Magistrate during motion hearings that this plaintiff could not rebut because he could not (did not) attend said hearings.

77. Defendants used the above strategy to wrongfully control discovery, hinder and then prevent disclosure of known exculpatory evidence (that they really had no case) and gain an unfair advantage over this plaintiff by abusing the civil process.

78. This was all done to defendants gain and the financial detriment of this plaintiff.

79. Not being able to dispose Jacob, this plaintiff did physically locate and find Jacob who had moved out of the State of Connecticut.

80. Upon meeting with Jacob in January 2005 and discussing this case, Jacob then provided this plaintiff with an affidavit regarding the true facts that he Jacob would be willing to testify to in Court, (See Exhibit A).

81. Said affidavit contradicts and undermines the defendant's entire new lawsuit case, which said affidavit is also supported by undeniable facts, information, dates, times, locations, meetings and documents that cannot be disputed. Jacob was listed and disclosed as a witness for the defendants' case.

82. Upon information and belief, defendants VCC, Vehslage and Curtin when first meeting with Jacob in June-July 2003, initially transmitted information back to

15

defendants AMTA, Lucas, TCOMTA, Ostendorf, SHW and White that Jacob might "play ball," "be a friend" and supply false testimony, the plan was for defendants to offer a reward of employment or money.

83. That was the only reason why Jacob was listed as their witness, disclosed as one who could "provide testimony concerning the formation of COMMTA."

84. Upon information and belief when Jacob moved and could not be "pinned down" and further coerced by defendants, to provide false testimony to "make" their case, defendants Armstrong, SHW and White had to prevent "at all costs" and keep Jacob from being deposed.

85. Upon information and belief defendant Curtin was not only removed from defending this plaintiffs Connecticut case but was also terminated by defendants VCC and Vehslage for his "dropping the ball" regarding Jacob and the plaintiffs 2002 Connecticut case.

86. In a subsequent communication to this plaintiff, defendant Vehslage notified this plaintiff that he was in fact now defending the Connecticut case.

87. It was then determined that defendant Curtin was suddenly no longer with the law firm defendant VCC.

88. Not being able to dispose another disclosed and listed witness Dr. Gregory Lawton, in January 2005 this plaintiff did locate Lawton and discuss this case, to which Lawton did then provided this plaintiff with an affidavit regarding the true facts that he Lawton would be willing to testify to in Court, (See Exhibit B).

89. Said affidavit supported by undeniable facts, information, dates, times, locations, meetings and documents that cannot be disputed, the Jacob affidavit.

90. Lawton was listed and disclosed as a witness for the defendants' IL case.

91. The defendants have abusively kept ALL witnesses from this plaintiff, stating "they will pick who is deposed and then they will have to volunteer to be such."

92. Defense also moved to protect and quash my deposition of one Steven Kitts, the owner of the Connecticut Center for Massage Therapy. (one of the owners of TCOMTA, inc) and (a member of AMTA).

93. Upon information and belief Mr. Kitts was duplicitous in supplying the defendants with materials and information regarding this plaintiffs business and leading up to defenses Illinois law suit.

94. Mr. Kitts was also listed as a witness and if deposed might be forced to "tell the truth" and "spill the beans," so defendants prevented plaintiff from getting at him also, when an attempt to depose Kitts was met with motions to quash and protect.

95. In each of the above paragraphed instances, defendants never (hoped) thought It would get that far, and when It did, they had to ignore the rules of procedure and prevent the truth from coming out so they disregarded the law, the rules, the process and the Courts.

96. The defendants violated the rules of procedure, rules of ethics and consistently acted in extreme bad faith, from prior too their law suit being filed to present.

97. In most of the defenses case pleadings they repeatedly state "upon information and belief this plaintiff did this, that, this and that."

98. When asked to specifically disclose upon <u>what</u> information and <u>whose</u> belief, the reply was intentionally evasive, non responsive, vague and a regurgitation of the pleadings (no specifics), because none existed.

17

99. This plaintiff has asked for discovery in the form of a damage analysis and financials because a claim for $400,000 in actual damages was initially 26 disclosed.

100. Their reply in open Court was "O, were just looking for the profits of Mr. Folkers business and therefore we do not have to supply financials or a damage analysis," knowing all along that Mr. Folkers business was in operation for ten months and only grossed $6,000, a transcript of the conference before Magistrate Levin confirms this.

101. This act contradicts their previous rule 26 initial disclosure of $400,000 (and rising) dollars in actual damages not including other costs of $250,000.,

102. As the defendants AMTA, TCOMTA case in Illinois unraveled the defendants AMTA, Lucas, TCOMTA, Ostendorf, SHW, White, Zimmer and Zelewski further misled the Federal Court by attempting to obtain a wrongful "defaults" against this plaintiff by presenting repeatedly knowingly false affidavits, Declaration and statements within motions and in hearings.

103. This plaintiff did obtain legal counsel in the form of an expert on trademark law to which said counsel as well as three other trademark law lawyers that plaintiffs counsel conferred with reviewed the defense case to include the application to the USPTO.

104. All four (paragraph 103) legal opinions concluded that the "certification ownership mark" claims in the defendants case were baseless and had absolutely no legal merit on their face, especially if brought by a so called renowned law firm SHW.

105. This information was then repeatedly transmitted to defendants AMTA, Lucas, TCOMTA, SHW, Armstrong, and White by plaintiffs counsel and knowingly "ignored" by said named defendants, whose law firm SHW specialized in trademark law.

106. The ignoring of the facts (paragraph 105) was intentional and done just to "drive up" the defense "costs" claims and to cause and "incur large costs" to this plaintiff, which was admitted to by defendant White to this plaintiff in a canted recorded phone call between this plaintiff, defendant White and Folkers.

107. When plaintiff did obtain legal counsel in the form of an expert on trademark law, said counsel concluded that the defendants AMTA and TCOMTA claims of certification mark ownership were clearly invalid for numerous reasons including in part "misuse of a mark," "mark invalidity," "fraud in the application," "unclean hands," "failure to protect," "real party not named in suit," and "failure to control the mark."

108. When faced with these legal opinions and the facts that there infringement case had no "intent" (which meant no costs, just profits, which were none) defendants then made an attempt at what they termed an attractive but "global" settlement, ultimately wanting all parties to just walk away from all actions, trying to get to their objective, still attempting to leverage plaintiffs case with the fraudulent claim of a "special Lanham case" and $250,000 in legal costs.

109. The defendants intentional plan all along was create such a demand on this plaintiff that this plaintiff would want to settle his lawsuit because AMTA and TCOMTA ultimately went from demanding $400,000+ in actual damages and $250,000+ in legal costs, to, "if this plaintiff withdraws his Connecticut case, defendants AMTA and TCOMTA will withdraw the Illinois case.

110. Upon information and belief the defense case in Illinois was intentionally crafted, planned and then carried out with the sole intent of being a bargaining chip to leverage this plaintiff in his Connecticut case and while doing just that, if defendants

19

could cost this plaintiff enormous financial loss it would also accomplish an added bonus of destroying plaintiffs business's.

111.  1. ALL defendants were duplicitous in committing wrongful acts that were intentional, wanton, reckless, malicious and tortious acts of;

112.  2. Defendants perpetrated, Vexatious Litigation, in, intentionally perpetrating various "Frauds upon United States Federal District Courts," "Fraud upon the United States Patent and Trademark Office, (hereinafter USPTO)" "Subornation of Perjury," "Witness Tampering," "Abuses of Civil Process" and the lawyer and law firm defendants "Violating the Cannon of Ethics."

113.  2. Defendants perpetrated Civil Conspiracy pertaining to (paragraph 111) above.

114.  3. Defendants perpetrated Aiding and Abetting pertaining to (paragraph 112) above.

115.  4. Defendant Lawyers and law firms perpetrated, Legal Malpractice.

116.  5. Defendants perpetrated, Violations of "The Connecticut Unfair Trade Practices Act, CUTPA."

117.  6. Defendants perpetrated, Violations of the Illinois Unfair Trade Act.

118.  7. Defendants perpetrated, Defamation.

119.  8. Defendants perpetrated, Intentional infliction of emotional harm.

120.  9. Defendants perpetrated, Negligence.

121.  10. Defendants perpetrated, Gross Negligence.

122.  11. Defendants perpetrated, Common Law Unfair Competition.

20

## COUNTS

<u>COUNT ONE</u>     **Vexatious Litigation**     As to ALL defendants.

Paragraphs 1-122 above are hereby incorporated and made paragraphs 1-122 of this the First Count;

123. The defendants were all duplicitous in committing the above acts (paragraphs 1-122) that were intentional, wanton, reckless, malicious acts which constitute Vexatious Litigation, in, intentionally perpetrating "Frauds upon United States Federal District Courts," "Fraud upon the United States Patent and Trademark Office, (hereinafter USPTO)" "Subornation of Perjury," "Witness Tampering," "Abuse of Civil Process" and the lawyers and law firms "Violating the Cannon of Ethics."

124. The defendants knowingly submitted false pleadings to US Federal Courts in Kansas, Illinois and Connecticut, which said allegations in a complaint are "binding" admissions.

125. What defendants pled as the truth and fact (regarding quality) in a Illinois Federal Court they pled as "puffery," "not true" in a Kansas Federal Court.

126. The defendants knowingly made by submission and by omission false representations to US Federal Courts in Connecticut, Kansas and Illinois to wrongfully affect outcomes in their favor.

127. COMTA, not the "real party" filed an appearance, an answer and motions in Federal Court in Connecticut, while all the time defendants VCC, Vehslage and Curtin really represented AMTA, to keep a false appearance of COMTA being separate and independent (autonomous of AMTA).

128. In April 2004, AMTA formed COMTA into the corporation TCOMTA, and assigned <u>ALL</u> rights to sue and collect damages, however AMTA remains in the Illinois case and is demanding $250,000 in legal costs, costs that AMTA knows TCOMTA did not incur, while all along vaguely spelled out in the assignment, TCOMTA gave AMTA valuable consideration for such costs.

129. Upon information and belief this assignment was solely a fraudulent conveyance to protect COMTA from a default, and judgment that was granted in Connecticut against COMTA.

130. AMTA collected consideration for the law suit, now wants to double collect from this plaintiff. The defendants VCC, Vehslage failed to promptly disclose to the Connecticut Federal Court that COMTA was now a corporation of its own, finally disclosing, (only after being Court ordered to do so, Feb.20 2004), COMTA as just as a "committee" of AMTA.

131. All the defendants intentionally continue to play this "shell game" with this plaintiff and the US Federal Courts using omissions, half-truths and lies.

132. The defendants knowingly submitted false motions to a US Federal Courts, to which plaintiff has thousands of pages of filings made by defendants all based on a frivolous and meritless lawsuit.

133. The defendants knowingly obtained wrongful rulings from a US Federal Court simply by taking advantage of the rules of procedure in Illinois, knowing that this plaintiff could not fly to Chicago every time the motions were to be presented or heard and if plaintiff did secure local counsel, which plaintiff did, defendants could then dive the costs of their case up, which defendants did.

22

134. The defendants did this intentionally, wanton, reckless, malicious and vexatiously with bad faith to effect and influence the outcome of another Federal law suit.

135. The US Federal Court then acted on said information to the financial detriment to this plaintiff.

136. This plaintiff had to accordingly attempt to respond to "thousands" of pages of frivolous pleadings, motions, and replies.

137. The defendant law firm SHW faxed over 500 pages through this plaintiff's facsimile machine, many of which were simply duplicated to harass and cost plaintiff.

138. This plaintiff had to travel to Chicago, when a frivolous motion to show cause was filed, which was denied.

139. This plaintiff had to ultimately hire an attorney (needlessly) at great expense. All knowingly and admitted to by White, and by design at the hands of the defendants.

140. These above acts by the defendants constitute vexatious litigation in filing a frivolous and meritless law suit, which caused financial damage to this plaintiff.

141. Specific acts of intentionally (filing false, pleadings, motions and statements) by the defendants constitute a Fraud upon a US Federal Court and bad faith by legal counsel and clearly outside of the F.R.Civ.P.

142. Specific acts of intentionally (filing false application, pleadings, motions, statements and omitting the truth) by the defendants constitute a Fraud upon the USPTO, which led in part to harm this plaintiff in the totality of costs to defend.

143. Specific acts of intentionally (coercing or trying to buy false testimony to "make" their case) by the defendants constitute Subornation of Perjury.

144. Specific acts (offering employment and monetary compensation for testimony) by the defendants constitute Witness Tampering.

145. All these acts enumerated herein by and of the defendants further constitute an Abuse of Civil Process.

146. These acts by the "lawyer and law firm" defendants further constitute Violating ethical and practice parts of the Cannon of Ethics and oaths given by each named defendant lawyer in order to practice law in the States and before the Federal Court.

147. If any of the defendant law firms or attorneys had not known of this "plan" from its inception, and had been informed (or should have realized it was wrong) subsequent to the inception, they had a legal bound duty to report any such wrongdoings, which <u>none</u> of the said defendants have done so far.

148. None of the named lawyers or law firm defendants acted properly towards this plaintiff a "pro se" litigant. In phone conversations, there was constant belittling, verbal abuse, threatening and a repetitive abuse of and not complying with or following the rules of procedures, in the form of intentional denying discovery, stalling, withholding evidence, bad faith statements, not cooperating, all simply because they are lawyers and this plaintiff is a pro se litigant and these defendants "the lawyers" just don't want to deal with a "pro se"

149. The enumerated acts by the defendants were all done with the sole intent to influence and then do harm to this plaintiff, emotionally and financially, which they have.

150. These enumerated acts were an attempt to actually "destroy" this plaintiff for exercising his right to seek redress in a US Federal Court.

<u>COUNT TWO</u>     **Civil Conspiracy**   As to ALL defendants.

Paragraphs 1-150 above are hereby incorporated and made paragraphs 1-150 of this the Second Count;

151. All of the defendants willfully conspired and had numerous and ongoing "meetings of the minds" with the intent to commit each wrongful act as enumerated.

152. All of the defendants willfully conspired and had numerous and ongoing "exchanges of information, documentation and planning" with the intent to commit each wrongful act as enumerated.

153. The actions of the defendants who conspired with the intent to commit the overt acts as enumerated in count one were malicious and has caused emotional and financial harm to this plaintiff.

154. All of the defendants did then carry out the conspiracy by taking action and did willfully commit in part and in whole the overt acts as enumerated in Count One.

155. These acts by the defendants were all done with intent to and did harm this plaintiff, financially and emotionally.

<u>COUNT THREE</u>   **Aiding and Abetting**    As to ALL defendants.

Paragraphs 1-155 above are hereby incorporated and made paragraphs 1-155 of this the Third Count;

156. Each of the defendants Aided and Abetted with each other with the intent to commit the overt acts as enumerated in Count One and Count Two all knowingly and with the wrongful intent to influence this plaintiff and by way of perpetrating a fraud upon Federal Courts and the USPTO to effect such influence.

157. At no time during this period did any named legal defendant or law firm come forward to report any wrongdoing to any Court, Judge or Magistrate or this plaintiff showing a vial contempt to see the misdeeds of one and all through.

158. These acts by all the defendants were all done to aid and abet each other with intent to and did harm this plaintiff and to "cover" each others back with more lies.

COUNT FOUR       **Legal Malpractice**       As to defendants Armstrong, SHW, VCC, White, Zimmer, Zalewski, Vehslage and Curtin.

Paragraphs 1-158 above are hereby incorporated and made paragraphs 1-158 of this the Forth Count;

159. The acts as enumerated in paragraphs 1 through 158 in Count One, Count Two and Count Three constitute legal malpractice committed by the law firms and through all the named lawyer defendants Armstrong, SHW, VCC, White, Zimmer, Zalewski, Vehslage and Curtin.

160. These wrongful acts by the named lawyer defendants (Armstrong, White, Zimmer, Zalewski, Vehslage and Curtin attorneys at law) were all done knowingly in violation of laws, with intentional, wanton, reckless, malicious intent too and did harm this plaintiff.

COUNT FIVE       **Violation of CUTPA**       As to ALL defendants.

Paragraphs 1-160 above are hereby incorporated and made paragraphs 1-160 of this the Fifth Count;

161. All of the acts by the defendants as enumerated in paragraphs 1 through 160 in Count One, Count Two, Count Three and Count Four constitute violations of the Connecticut Unfair Trade Practices Act, §§42-110g(a) <u>et seq</u> of the Connecticut

26

General Statutes, in their conduct and in their public representations of professional people that should be above reproach and the public can trust in, such as the plaintiff, could expect them to adhere to, which they did not.

162. Because all of the said wrongful and deceptive acts constitute violations of CUTPA, all Defendants collectively and individually are liable to this Plaintiff for costs and damages, including punitive in accordance with §42-110g(a) and (g) of the Connecticut General Statutes.

163. Because all of the said wrongful and deceptive acts contradict their professional claims constitute violations of CUTPA, and are based on "fraud" all Defendants collectively and individually are liable to this Plaintiff for treble damages.

<u>COUNT SIX</u>  **Violation of IL UNFAIR TRADE ACTS**    As to ALL defendants.

Paragraphs 1-163 above are hereby incorporated and made paragraphs 1-163 of this the Sixth Count;

164. All of the acts by the defendants as enumerated in paragraphs 1 through 163 in Count One, Count Two, Count Three and Count Four constitute violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., which in essence is sounded upon "fair play" and representations to the public, which is certainly not the acts of the defendants in this matter.

165. The acts as enumerated within this complaint of each defendant individually and collectively in publicly conducting "this" and their business were unfair, improper and wrongful, to which this plaintiff has suffered from and is being damaged.

166. The above acts further constitute a violation of Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1 et seq. in that the acts of the

defendant's unfair methods of competition and unfair and deceptive trade and business practices impacted upon and have financially damaged this plaintiff and his like d/b/a organization.

<u>COUNT SEVEN</u>   **DEFAMATION**   . per se and quod as to ALL defendants and then AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW and White in "False Light." Paragraph 1-166 above is hereby incorporated and made paragraphs 1-166 of this the Seventh Count;

167. The specific acts as enumerated in paragraphs 36 - 45 above constitute intentional public defamation per quod of this plaintiff by the above named defendants AMTA, Lucas, and TCOMTA, Ostendorf, Armstrong, SHW and White.

168. The combined acts of ALL the defendants as enumerated above (publicly disseminating untrue information) were intentionally perpetrated and did cast dispersion on this plaintiffs (who is not a celebrity) name and reputation and does constitute "defamation in false light."

169. This plaintiff did make demands that defendants cure defamative acts, to which defendants AMTA, Lucas, TCOMTA, Ostendorf, Armstrong, SHW, and White all refused.

170. A Federal protective order was issued pertaining to defendants VCC, Vehsledge and Curtin pertaining to the disseminating of information.

171. Upon information and belief, defendants AMTA, Lucas and TCOMTA, Ostendorf, did electronically transmit said defamative statements to their member base which numbers 50,000+.

28

172. Defendants AMTA and TCOMTA represent that "what they publicly state" is "trusted" and "relied upon" by National, State, Local healthcare, political and the educational communities and professionals, to which the false representations were also made to with the intentional sole and malicious intent to destroy the credibility of this plaintiffs name and reputation and the business that this plaintiff relies on for his livelihood to which in part they were successful in doing.

173. This act (paragraph 172) gave the defendants an "added bonus" that they could "get away with" and escape liability for in a personal action such as this one by this plaintiff not being able to claim "trade defamation."

## COUNT EIGHT    **INTENTIONAL INFLICTION OF EMOTIONAL HARM**   As to ALL defendants.

Paragraph 1-173 above is hereby incorporated and made paragraphs 1-173 of this the Eighth Count;

174. The above enumerated acts by each and collectively all of the defendants were knowingly wanton, reckless, intentional and malicious and were known to cause emotional harm to this plaintiff, which it has.

175. These acts were also committed to wrongfully influence the outcome of a Federal Law Suit, which would cause emotional harm on this plaintiff.

## COUNT NINE    **NEGLIGENCE**    As to ALL defendants.

Paragraph 1-175 above is hereby incorporated and made paragraphs 1-175 of this the Ninth Count;

176. The enumerated acts above were wanton reckless malicious intentional acts individually and in totality of and by all the defendants and constitute negligence by each defendant individually and collectively.

177. This plaintiff was harmed financially and emotionally by the negligent acts of all of the defendants.

COUNT TEN       **GROSS NEGLIGENCE**      As to ALL defendants.

Paragraph 1-177 above is hereby incorporated and made paragraphs 1-177 of this the Tenth Count;

178. The totality of the above enumerated acts as well as the individual acts of each and by all the defendants constitutes gross negligence on the part of each defendant.

179. This plaintiff was financially and emotionally harmed by the gross negligence of each and all the acts of the defendants.

180. The above acts as enumerated in the paragraphs above by the defendants individually and collectively were wanton, reckless, and intentional and were malicious acts solely to bring about influence, harm and great financial loss to this plaintiff, the business that he operates and his family, which it has.

COUNT ELEVEN   **COMMON LAW UNFAIR COMPETITION**   As to AMTA, TCOMTA, Armstrong, SHW, VCC, White, Zimmer and Zalewski defendants.

Paragraph 1-180 above is hereby incorporated and made paragraphs 1-180 of this the Eleventh Count;

181. The acts as enumerated in the above counts constitute common law unfair competition in the State of Illinois.

182. Even though the named defendants stated openly and officially that "they have no problem with competition or the business of this plaintiff," they published internal "for members only" secrete memos and reports that clearly indicate and state their distain and desires to eliminate ALL competition in the field.

183. They announced to their members that they were the "anointed ones" in the field, to which said above acts were also conspired and then carried out in part to eliminate competition of this plaintiff's organization NOAMSE as well as Mr. Folkers business.

184. To use their exact words from their internal July 2002 strategic plan: "weed out."

185. Upon information and belief the primary defendants AMTA and TCOMTA are 501 Not for Profit Corporations made up of and chartered to benefit "massage therapists" and schools, It is clearly not in their charter or by laws that one of their primary functions that they have adopted is to "WEED OUT" other businesses.

186. The process (their acts as enumerated above) by which they intentionally employ to "weed out" competition and businesses is wrongful, unfair and noncompetitive.

**WHEREFORE**, this plaintiff claims and prays for the following relief from this Court:

1. Compensatory damages in the amount $1,000,000.
2. Defamation damages in the amount of $5,000,000.
3. A sanction amount to this plaintiff equal to that demanded and claimed by defendants AMTA, Inc and TCOMTA, Inc, SHW in the amounts of ($400,000 false claimed damages) and ($250,000 claimed costs) to equal $650,000.
4. Treble damages on the amounts sought for in lines 1, 2 and 2 above.
5. Punitive damages as provided under C.U.T.P.A., §42-110g of the Connecticut General Statutes.