Students' responses to COMTA questionnaires demonstrated that the students were unaware of mission of the school, lack of organization, not sure if they were receiving 600 hours as advertised. (Griffith testimony 5/12/05 9:26:45 a.m.). Among other things, COMTA was unable to "verify the performance criteria and the relationship of the various measurement activities to the final grade with the class." (plaintiffs' exhibit 18, page 32). Yet again, GALEN's efforts to cloak itself in DPH authorization falls short. In 2001, the state advised GALEN that it's inspection found no evidence students were advised of progress. (LATTANZIO testimony 5/10/5 2:11:11). In 2002 the state again visited GALEN and found deficiencies in the program. (LATTANZIO testimony 5/10/05 2:18:50 p.m.). Therefore, the only evidence GALEN presented regarding COMTA's alleged failures, i.e. DPH approval is unsupported by facts, COMTA was justified in finding GALEN did not meet this criteria.

### xvii.  STANDARD 7.2: CONSIDERATION OF STUDENT GOALS

Standard 7.2 requires that the applicant have in place a systematic and continuous program of assessment to evaluate the educational quality of the program; the extent to which it fulfills its objectives; and the quality of services it provides graduates. One criteria used to verify this standard is the use of student goals; more specifically that "Graduates are able to obtain employment or practice privately in accordance with their goals." (plaintiff's exhibit 18, page 34). COMTA was unable to verify the criteria of standard 7.2 as GALEN provided no verification that student goals were being utilized. This fact was as much as admitted by, LATTANZIO when he testified on direct examination that GALEN does not take student goals into consideration when developing its program. (LATTANZIO testimony 5/5/05 4:36:23

31

p.m.). GALEN's challenge as to the unsatisfactory rating with respect to this standard lacks any basis in fact and accordingly is without merit.

### xviii.  STANDARD 9.3: STUDENT INSURANCE

COMTA's standard with respect to student insurance specifically calls for the school to provide, i.e. purchase, professional liability insurance its students. (OSTENDORF testimony 5/16/05 9:50:46 a.m.). A review of the insurance policy contained in the GALEN catalogue reveals the following:

> "When the student reaches a point in the program when they can practice massage work off campus (approximately mid-point in the program) we require, for their own protection and to encourage professional commitment, that they obtain professional student liability insurance. We advise them on the associations that provide such and assist them in completing the necessary forms. The average cost of one million dollars of student liability insurance per year is $40."

(defense exhibit I, page 6).

LATTANZIO was offered the opportunity to present evidence that GALEN provided to COMTA verification that GALEN provided insurance which covered students. He was unable to produce such evidence. This is due to the fact that GALEN did not provide insurance for students. GALEN required students to join a professional group and purchase insurance themselves. (LATTANZIO testimony 5/9/05 12:46:55 p.m. and 12:47:53 p.m.) This is not the standard. Therefore, GALEN did not meet standard 9.3.

### F.    GALEN DID NOT PROVIDE ADEQUATE RESPONSES TO COMTA INQUIRES

32

GALEN failed to provide adequate responses to at least two areas of inquiry made by COMTA during the accreditation process.  COMTA policies require that the Institution seeking accreditation must provide an SSR  which answers "a set of specific questions about all of its parts, ranging from its mission and objectives to fiscal responsibility." (Plaintiffs' Exhibit 1, Policies and Procedures, page 1, sec. I, subsection 1).  As such, inquires regarding the financial exposure related to lawsuits against GALEN are a necessary inquiry made by COMTA site team evaluators. Furthermore. polices also require that "the program shall be completely candid, providing all pertinent information." (Plaintiffs' Exhibit 1, appendix E, page 3). COMTA attempted to obtain information about a number of lawsuits brought against GALEN by students in an effort to determine the financial risk that these lawsuits presented. This is a legitimate area of inquiry since these lawsuits could impact GALEN's ability to operate its school.  In an effort to determine this exposure, OSTENDORF attempted to obtain information from GALEN'S attorney.  OSTENDORF was unable to get any information, as Attorney Amato refused to provide same citing the attorney – client privilege. (OSTENDORF testimony 5/16/05 9:36:45 a.m.).  OSTENDORF then went to LATTANZIO in an effort to obtain further information and secure a waiver of the attorney – client privilege. (LATTANZIO testimony 5/10/05 4:39:50 p.m. OSTENDORF testimony 5/16/05 9:39:42 a.m.). COMTA never did obtain information necessary to verify the amount of exposure (OSTENDORF testimony 5/16/05 9:40:02 a.m.).

The second area of inquiry that GALEN failed to provide a sufficient response to, involved a handwritten nine page complaint letter sent by Elena Slesinski to COMTA. (defendants' exhibit L). Said letter contained numerous allegations concerning GALEN's

33

program and Ms Slesinski's belief that students were not getting a quality education. This letter was faxed to GALEN and received by LATTANZIO. COMTA requested that GALEN offer a response to these allegations.

During the trial, LATTANZIO testified twice on direct examination that he did offer a response to COMTA. (LATTANZIO testimony 5/3/05 5:05:10 p.m. and 5/9/05 11:09:46 a.m.). On both of these occasions, LATTANZIO testified that he advised COMTA that Slesinski had Multiple Sclerosis and/or some other physical ailment which prevented her from continuing in her duties at GALEN. He further testified that "I explained in a letter to Mr. Fridley what had happened." (LATTANZIO testimony 5/3/05 5:05:10 p.m.). No such letter has been produced by LATTANZIO or GALEN. This was the only reply LATTANZIO offered at trial. (LATTANZIO testimony 5/10/05 4:31:14 p.m.). LATTANZIO never responded to the substantive allegations made about the program itself.

LATTANZIO was offered the opportunity on cross-examination to identify this written response he claims to have provided to COMTA concerning the Slesinski. He could not produce the alleged letter. As such, GALEN failed to meet COMTA requirement of open and complete candor with respect to their legitimate inquires into the GALEN program.

### G.     COMTA COMMISSIONERS DENIED GALEN'S APPLICATION

GALEN attempts to argue that the site team members "hold the key to accreditation" contrary to COMTA'S policies is a distortion of the evidence presented at trial. (GALEN Trial Memorandum, page 26). LATTANZIO provided testimony himself in which he stated "Commissioners made the accreditation decisions." (LATTANZIO testimony 5/3/05 3:08:05 p.m.). GALEN now attempts to argue otherwise.   GALEN

concedes that the only testimony with respect to the accreditation decision was provided by Goss, OSTENDORF and Griffith. Furthermore, a review of COMTA policies and procedures contained in plaintiffs' exhibit 1 clearly reveals that COMTA Commissioners make the accreditation decision. (Goss testimony 5/12/05 12:23:00 p.m. and 12:25:53 p.m.).  The trial testimony of Goss, Griffith and OSTENDORF reveals that the site team reports its findings based upon their observations during the site visits. These findings are a collaborative effort in that if there is disagreement, discussion and debate is held until the rating is settled. (Griffith testimony 5/12/05 9:39:31 a.m.). GALEN mischaracterizes Griffith's testimony when it argues "the final ratings assessed are those made by the team member enjoying primary oversight over the subject standards." (GALEN Trial Memorandum Page 25).  Rather, Griffith's testimony was that there is deference to the team member enjoying primary oversight, a logical conclusion given that the team member was specifically assigned to verify that standard.  It would naturally follow that his or her opinion would carry more weight that that of a team member who came across some element in passing while attempt to document other standards.

Further evidence revealed that Goss conducted his own separate review of the SSR, site team report and GALEN's response to the site report.  Goss was not bound by the site team report and in fact testified that he changed two of ratings to find GALEN had satisfied the standard. (Goss testimony 5/12/05 12:15:43 p.m.).  These changes were based upon Goss' separate and independent review of GALEN's application. GALEN's argument that it was individual team members who "hold the key" is a mischaracterization.  The team members are the eyes of COMTA and as such are

35

integral to the accreditation process, but the evidence is uncontroverted that the team members are not the final arbiters or decision makers with respect to an application. The report itself contains no recommendations, but rather its only purpose is to document what was observed during the visit.

## H.    GALEN FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES

GALEN failed to exhaust its administrative remedy by not appealing COMTA's May 5, 2003 decision wherein accreditation was denied. (Plaintiffs' Exhibit 1, Policies and Procedures, sec V, page 9). GALEN argues that the reason for its failure to appeal was its belief that any appeal after April 2002 was fruitless as the 33 month period ascribed by C.G.S. §20-206b(c) had expired. A review of the evidence reveals that this argument lacks any merit. GALEN admitted that its students were eligible for licensure after April 2002 according to a representation made by Jan Cordero of DPH to GALEN on or about May 14, 2002. (Plaintiffs' Exhibit, page 2; Plaintiffs' Exhibit 32).  This was true until the declaratory ruling of  June 28, 2004.[2]  GALEN graduates therefore remained eligible for licensure a full two years after the site visit and expiration of the 33 month grace period. This fact was known to GALEN in May 2002 and in May 2003 as well.  Further, GALEN graduates were still eligible a full year after the denial of its application in May 2003.  Therefore, GALEN's argument that an appeal was fruitless due to the expiration of the 33 month period is unpersuasive in light of the fact that GALEN graduates were still eligible for licensure notwithstanding the expiration of the

---

[2] Plaintiffs alluded to this decision at trial but never offered the decision itself into evidence.  GALEN in its Trial Memorandum asks this court to take judicial notice of this decision.  Defendants are willing to stipulate to the fact that the Department of Public Health did in fact issue a declaratory ruling on or about June 28, 2004 that in essence, found that Galen graduates would not be eligible for licensure absent accreditation by a federally recognized accrediting agency or COMTA required by C.G.S. § 20-206b(a).

36

33 months. As noted below, a wrongful denial could have been addressed and remedied via the appeals process by August 5, 2003, 10 months <u>before</u> the adverse DPH ruling noted above. It was GALEN's perception that COMTA accreditation was "moot" and this alone caused GALEN to choose not to appeal COMTA's May 5, 2003 denial. This failure is again solely that of GALEN and not COMTA.

### I.    COMTA DID NOT VIOLATE CONFIDENTIALITY AGREEMENTS

GALEN's contention that COMTA violated its policy concerning integrity by forwarding the SSR to site team members prior to the execution of the confidentiality agreement is without merit. The evidence demonstrated that site team members received the SSR prior to the site visit in order to facility the site visit. Evidence also demonstrated that confidentiality agreements were signed by site team members (Griffith testimony 9:49:40 a.m.). At the conclusion of the site visit, all materials including the SSR and any information gathered on the site visit were boxed and shipped to COMTA (Griffith testimony 9:40:12 a.m.). GALEN offered no evidence, that anybody from COMTA or the site team disseminated any information obtained during the accreditation process wrongfully or illegally.

GALEN also attempts to argue that COMTA violated confidentiality agreements by forwarding a copy of the site report to DPH officials. Because accreditation is a requirement in Connecticut, it is permissible and appropriate release the report to DPH, who can in turn utilize it as part of their fact finding. Regardless, by his own admission, LATTANZIO took the site report to DPH officials in May 2002 and showed them the report. As such, any claims by GALEN that the information on the site report was

wrongfully shared by COMTA with DPH is without merit as LATTANZIO himself shared the report with those very same officials.

## J.    COMTA DID NOT HAVE A CONFLICT OF INTEREST

GALEN argues that COMTA had a conflict of interest and in fact utilized Linda Derrick and or Steve Kitts as "local agents" to sponsor a petition seeking a declaration that GALEN graduates continued eligibility for licensure violated C.G.S. § 20-206b. GALEN offered absolutely no admissible evidence in support of this argument. Derrick's term as a commissioner expired in 2001. The Commissioners do not see SSR material, site reports nor the response to same until after the site visit and approximately one month before the Commissioners' Meeting. (Goss testimony 5/12/05 12:16:20 p.m.). The site visit was March 2002, the site report was April 2002 and GALEN's response was May 2002. Goss therefore received the materials no earlier than May 2002  No evidence was ever introduced to demonstrate that Derrick ever had access to the materials.

Additionally, GALEN contends that Kitts presence in Washington D.C. when COMTA was also present for a hearing on COMTA's application for federal recognition logically leads to the conclusion that COMTA and Kitts engaged in some sort of inappropriate communications.  GALEN is asking this court to speculate as to what if any communications transpired and what those communication may have encompassed.  Furthermore, GALEN argues that COMTA became aware of GALEN graduates' continued eligibility for licensure in November 2003, following LATTANZIO's deposition in the present action. It is, however, impossible that COMTA communicated to Kitts certain facts in July 2002 which plaintiffs claim COMTA first learned about

following a November 2003 deposition. These arguments are wholly unsupported by admissible evidence and the plaintiffs' argument can not be supported absent sheer speculation..

Furthermore if, *arguendo,* the court were to find that COMTA did in fact engage in inappropriate communications with CCMT, Kits or Derrick, which COMTA specifically denies, there still can be no conflict of interest.[3]  COMTA and GALEN's business relationship ended on May 15, 2003.  Pursuant to COMTA polices, after the adverse action, i.e. the May 5, 2003 denial of GALEN's application, GALEN had 10 days within which to appeal and 30 days within which to respond point by point to the decision. (Plaintiffs' Exhibit 1) Thereafter, within 90 days the appeal will be heard by the Appeals Committee. As such, within 90 days or by August 5, 2003, GALEN would have had the opportunity to remedy any alleged wrongdoing or errors committed by COMTA. These timelines were clearly articulated to GALEN in the May 5, 2003 denial issued by COMTA. (Plaintiffs' Exhibit 23).  However, GALEN again took no action whatsoever, and any business relationship and duties and obligations pursuant thereto between the two entities ceased to exist after the expiration of the appeal period.  In fact, the only relationship that existed between GALEN and COMTA after May 15. 2003 was the instant lawsuit in which they were adversaries.  As such in November 2003 there could be no conflict of interest between the two.

### K.    COMTA DID NOT VIOLATE ITS POLICY BY RELYING ON VERBAL COMPLAINTS

GALEN once again mischaracterizes the evidence with regard to COMTA policies concerning complaint procedures.  GALEN cites the complaint form identified

---

[3] Black's Law Dictionary seventh edition defines conflict of interest as follows: A real or seeming incompatibility between one's private interests and one's public or fiduciary duties.

921971.1

as Form 13a of appendix D located in plaintiffs' exhibit 2 in support of their argument that consideration of anonymous complaints by COMTA violated its policy not to consider same. GALEN misstates in its Trial Memorandum "COMTA possess a policy to consider only written complaints concerning underlined applicant (emphasis added) schools." (GALEN Trial Memorandum, page 22) . The policy cited by GALEN applies to accredited schools.

In order to resolve this issue, an examination of the complaint process as out lined in COMTA's policies and procedures is necessary. The policy articulated in plaintiffs' exhibit 1, policies and procedures, page 17 reveals the following pertinent provisions:

> "For complaints brought against institutions recognized or offering programs recognized by the Commission on Massage Therapy Accreditation, or against the Commission, its staff or its volunteers, the process is as follows..."

The procedure then references appendix A.1, which is where the requirement of a written complaint is stated. Form 13A located in Appendix D is also referenced in the complaint procedure identified as applicable to accredited programs. Therefore, plaintiffs' reliance on Form 13A is misplaced.

Finally, plaintiffs offered no evidence that and adverse action was taken against GALEN as a result of non-written complaints. Clearly COMTA spoke with individuals concerning the merits of GALEN's program, but the evidence is overwhelming COMTA acted based upon the failure of GALEN to verify that it met all of COMTA standards.

### L.    COMTA'S BUSINESS ORGANIZATION IS IRRELEVANT

GALEN alleges that COMTA was not legally organized under the laws of Connecticut and at all times authorized to conduct business within the state. GALEN

40

further argues that it was damaged as a result. However, GALEN's repeated attempts to offer evidence as to the organization of COMTA was ruled time and again inadmissible by the Court. The Court found this proposed offer of evidence to be inadmissible as its offer was irrelevant to the issues in dispute. LATTANZIO himself admitted he was unaware of COMTA's organization when he chose it to accredit GALEN. LATTANZIO's reason for choosing COMTA was because COMTA was named the Connecticut statute. As there was no reliance on the business organization of COMTA, any evidence was inadmissible and the plaintiffs' efforts to renew this argument in it Trial Memorandum should be disregarded in its entirety. [4]

LATTANZIO also raises the relationship between COMTA and AMTA in his Trial Memorandum. However, like above, the Court repeatedly ruled any such offers of evidence inadmissible and defendants' therefore object to LATTANZIO's Trial Memorandum with respect to these references. As the court has already found this relationship irrelevant the defendants urge the court to disregard LATTANZIO'S argument in its entirety.

## M.    NEITHER GALEN NOR LATTANZIO HAVE PROVEN ANY DAMAGES

Neither plaintiff has offered any credible admissible evidence as to the extent of damages as a result of any of the alleged wrongs committed by COMTA. As such plaintiffs are not entitled any recovery. GALEN and LATTANZIO  argue that they sustained five forms of damages:

---

[4] To the extent the court does permit this argument, the defendants wish to request that the Court take judicial notice of the Admissions made by GALEN in its responses to defendants' interrogatories dated, September 23, 2003. More particularly, in response to interrogatory 10 c, d, e, & f, GALEN admitted that COMMTA is not organized to do business in Connecticut; does not have a registered office or agent in Connecticut; does not have  a certificate of authority to conduct business in Connecticut; and COMMTA is not registered with the Secretary of States Office.

921971.1

    i.       cost of accreditation
    ii.      conversion of proprietary trade secrets
    iii.    diminution of value of GALEN as a business
    iv.   attorney's fees with respect to the instant action
    v.     defamation of LATTANZIO.

Neither plaintiff has offered any evidence to support claims of any of these damages and is asking the court to speculate as to damages. As such an award of damages is not supported by factual evidence and should not be granted with respect to any of the five classifications articulated above.

### i.    COST OF ACCREDITATION

Throughout the course of direct testimony LATTANZIO testified that the cost of the accreditation process was between $180,000 – $190,000. Despite these estimates, no evidence was offered to support these claims. No receipts were offered as evidence. No payroll records to document alleged employees hired to assist in the process, nor those allegedly paid overtime to prepare the SSR. When testifying as to these damages LATTANZIO conceded that "I don't remember everything." In fact the only specific reference, again unsupported by payroll records or any other documentation, was LATTANZIO's claim that Carole Woodbury was hired to assist in the accreditation process. (LATTANZIO testimony 5/3/05 4:36:04 p.m.). He further testified that Woodbury cost GALEN $90,000 for her assistance. LATTANZIO testimony 5/3/05 4:36:48 p.m.). This contention is unsupported by any evidence aside from LATTANZIO's own self serving testimony. A review of the remainder of LATTANZIO's directly contradicts these claims.

921971.1

LATTANZIO testified that it was he who performed the pre-accreditation planning. (LATTANZIO testimony 5/3/05 3:27:33 p.m.). He further testified that the process of assembling and completing the SSR began upon his return from the March workshop. (LATTANZIO testimony 5/3/05 3:28:16 p.m.).   GALEN terminated its relationship with Woodbury on or about March 28, 2001 (LATTANZIO testimony 5/10/05).  Numerous reasons were cited for Woodbury's termination.

Woodbury's termination on or about March 28, 2001 was less than two weeks after LATTANZIO's attendance at the COMTA workshop and a full four months before GALEN's application to COMTA signifying the commencement of the accreditation process. LATTANZIO would ask this court to believe that in the two weeks between the workshop and Woodbury's termination she engaged in preparations for the accreditation process amount to $90,000. This proposition is unfathomable.

Additionally, with respect to the alleged remuneration given to Woodbury by GALEN, LATTANZIO testified that Woodbury was not paid a salary (LATTANZIO testimony 5:11:05 11:03:00 a.m.). She was in fact, an equal partner in the Stamford facility, which was not being considered by COMTA for accreditation.  No evidence was ever introduced regarding the terms of the partnership and plaintiffs' failed to establish that either Woodbury was compensated in the alleged amount of  $90,000 nor such compensation was in any way related to the accreditation preparations for the Wethersfield location.

###    ii.    CONVERSION

Count two of plaintiffs' complaint asserts a claim of trover for the alleged conversion of GALEN's trade secrets.  Neither GALEN nor LATTANZIO appear to have

43

litigated this issue, nor argue same in their respective Trial Memorandums. It therefore appears that they have abandoned these claims. To the extent that they have not, it is clear that they failed to produce any evidence in support of same. GALEN claims that the trade secrets consists of syllabi, lesson plans and course outlines etc. However, GALEN has introduce no evidence as the value of these "trade secrets" nor the cost to develop them. In light of GALEN's comments in the response to the site report, wherein GALEN claims "The concepts are time tested and have been used since 1942 far before COMTA created its standards." (plaintiffs' exhibit, page 2) there appears to be serious questions as to whether or not these methods are in fact secret.

### iii.    DIMINUTION OF VALUE OF GALEN

GALEN claims that as a result of its failure to become accredited by a COMTA that it has suffered a diminution of value. However, no evidence as to its current value was ever introduced. No evidence as to its value if it had achieved COMTA accreditation was ever introduced. GALEN in fact chose COMTA for accreditation with the full knowledge that success would not guarantee access to federal funds as COMTA was not federally recognized at during GALEN's participation in the accreditation process. Galen has since failed to achieve accreditation from a federally recognized agency, thus failing to mitigate any such damages stemming its failure to achieve COMTA accreditation.

GALEN's efforts to prove its diminution of value is not supported by any evidence. GALEN revenues increased from 2000 – 2001. Additionally GALEN opened a third campus in 2002 in New London, Connecticut. (LATTANZIO testimony 5/3/05 11:32:00 a.m.).

44

However, to the extent the court finds that there has been a diminution in value, there have been multiple allegations made by LATTANZIO and GALEN as to the cause of such damages.  On cross-examination, LATTANZIO admitted both he and GALEN are plaintiffs in a federal lawsuit against three DPH employees which includes numerous allegations of financial injuries suffered due to the conduct of those defendants.  LATTANZIO admitted that GALEN claims as a result of alleged DPH wrongdoing that existing students withdrew from GALEN and prospective students chose not to enroll.  As a result, GALEN claims that it financial condition was harmed and rendered less stable and that it lost growth and expansion possibilities.  GALEN further claims it expended great sums in order to comply with Brenda Lerner's arbitrary capricious and vengeful mandatory requirements that GALEN change its catalog and enrollment agreement.  As such, if any financial harm was suffered by GALEN, it may very well be attributable to the conduct of DPH, and not COMTA.  To the extent to court finds any diminution of value, an attempt to apportion same would require a exercise of speculation and guess work.  As such GALEN is not entitled to damages for alleged diminution of value.

### iv.    ATTORNEYS FEES

LATTANZIO claims attorneys fees for the work he allegedly has expended in this acting on his own behalf.  Yet again, no evidence was offered as to the amount of work that was done nor an estimate as to the number hours expended during the course of this lawsuit.  LATTANZIO admitted to being involved as a pro se litigant in the litigation against DPH as well as being involved in traveling to Washington D.C. to oppose COMTA's renewal of federal recognition.  At that hearing, LATTANZIO testified as to the

45

existence of lawsuits between GALEN and COMTA. (Goss testimony 5/12/05 12:28:31 p.m.). To the extent that the court finds any truth in LATTANZIO's claims that additional staff were hired to perform his functions so that he might litigate the instant case, the court would still be asked to engage in speculation as to how much work has been performed by LATTANZIO and how to apportion LATTANZIO's legal activities with respect to GALEN's other legal proceedings.

## v. DEFAMATION OF LATTANZIO[5]

LATTANZIO raises for the first time in his Trial Memorandum allegations of defamation. More specifically, LATTANZIO claims "This court should infer into the pleadings (pro se) that defamation has also occurred and GALEN as well as LATTANZIO is entitled to damages." (LATTANZIO Trial Memorandum, page 20) However, no evidence was introduced to demonstrate defamatory statements were made by COMTA.    Additionally, absolutely no evidence was offered with respect to harm to the reputations of plaintiff suffered as a result. In fact the only evidence of plaintiffs' reputation introduced at trial was that LATTANZIO was threatening and intimidating to students. Furthermore, these statements were published by a DPH official, and thus raise questions as to the cause of any injury to reputation, to the extent the Court finds any damages at all. Therefore to apportion any damages to COMTA or OSTENDORF would require speculation on the part of the court. These comments were made not by COMTA representatives but by state officials.  Since no evidence was introduced to support a claim for defamation nor was any evidence to support damages introduced plaintiffs', claims are without merit.

---

[5] LATTANZIO never raised this claim in his pleadings nor at trial and raises it for the first time in his Trial Memorandum. As such defendants object to same.

921971.1

## II.    __LAW AND ARGUMENT__

**COUNT ONE : NEGLIGENCE**

Plaintiffs have alleged various acts of negligence committed by COMTA during the accreditation process in their complaint. In GALEN's trial memorandum, it admits however, that the standard consistently applied by federal courts to disputes regarding denial of accreditation is whether the accrediting agency acted arbitrary and or capricious.[6] As such, defendants will not reiterate that standard as articulated by plaintiff beyond noting that each court that has examined this issue has determined that it is not their function to conduct a de novo review of the decision, nor is it their role to inject their own substantive evaluation of the accreditation decision. Plaintiffs also attempt to argue in the alternative, that a negligence standard should apply but site no case in support of this position. It is therefore clear, based upon cases cited below as well as those in GALEN's Trial Memorandum, that the law is well settled and the more deferential standard of arbitrary and capricious conduct on behalf of the defendants is necessary to support a verdict in plaintiffs' favor.

Regardless of which standard is applied, the facts, as described above, are clear and uncontroverted. GALEN delayed the accreditation process. GALEN refused the

---

[6] See also Ambrose v. New England Assoc. of Schs. & Colleges Inc., 252 F.3d 488 (1st Cir. 2001); Parsons Coll. v. N. Central Assoc. of Colleges & Secondary Schs., 271 F. Supp. 65 (N.D. Ill. 1967); Med. Inst. of Minnesota v. Nat'l Assoc. of Trade & Tech. Schs., 817 F.2d 1310 (8th Cir. 1987); Massachusetts Sch. of Law at Andover, Inc. v. American Bar Assoc., No. 95-CV-12320-MEL, 1997 U.S. Dist. LEXIS 7033 (D. Mass. May 8, 1997)

47

assistance of COMTA.  GALEN failed to provide necessary verification, and in some cases, failed to provide responses at all.  COMTA's actions and decisions are clearly supported by the facts found during the site visit and as such there is no evidence of arbitrary and capricious behavior.  Furthermore, since the facts presented support COMTA's denial of accreditation, there can be no finding of negligence.  Accordingly, COMTA and OSTENDORF are entitled to judgment in their favor with respect to Count One.


**COUNT TWO : FRAUD IN THE INDUCEMENT**

Plaintiff has the burden of establishing four required elements to be entitled to recover on the second count alleging fraud.  These four elements are "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Paiva v Vanech Heights Constr. Co., 159 Conn. 512, 515, 271 A.2d 69 (1970). Furthermore, the mere preponderance of evidence is insufficient to establish fraud.   "Fraud is not to be presumed, but must be proven by clear and satisfactory evidence." Miller v Appleby, 183 Conn. 51, 55, 438 A.2d 811 (1981).

Plaintiffs allege two instances of fraud as committed by that the defendants COMTA and OSTENDORF.  The first claim involves statements made by OSTENDORF at the March 2001 workshop attended by LATTANZIO.  Specifically, plaintiff alleges that OSTENDORF claimed that COMTA had never not approved a school for accreditation. Defendants OSTENDORF and COMTA do not deny this statement was made.

However, plaintiff offered no evidence at trial to demonstrate the statement was false when it was made in March 2001  In fact, evidence presented a trial demonstrates that one and one school only; i.e. GALEN, has ever been denied accreditation by COMTA. This denial occurred on May 5, 2003 a full two years after the OSTENDORF statements of which GALEN complains. The statement, therefore was not untrue at the time it was made in March 2001.  Plaintiffs claim for fraud in the inducement based upon this statement is clearly unsupported by clear and convincing evidence necessary, nor any evidence at all, for a verdict to be rendered in their favor.

Plaintiffs' second claim of fraud in the inducement is with respect to the time frame in which accreditation could be accomplished.  LATTANZIO repeatedly testified as to a 33 month time frame by which Conn. Gen. Stat. 20-206(b) required GALEN to become accredited.  Based upon LATTANZIO's testimony, GALEN needed to become accredited by April 2002 in order to be in compliance with Connecticut law.  GALEN argues that COMTA delayed the site visit thereby making accreditation by April 2002 impossible, yet no evidence was introduced to support this contention.

It is clear from the facts noted above that the site visit occurred one – two months prior to the expected date indicated in the published timelines.  Plaintiffs offered no evidence that statements made were in fact false. The failure to become accredited in the 33 month time frame is due to GALEN's own delays in attending the pre-accreditation workshop, filing its application, submitting its first SSR, and refusing the assistance and advice of Steve Fridley.  The evidence lacks any support it was the conduct of COMTA that resulted in the inability to submit GALEN's application to the April 2002 commission for a decision. If anything, the record reflects that COMTA did

49

everything that it could have commencing, in August 2001 to ensure that GALEN had the opportunity to achieve accreditation by April 2002. Had GALEN acted with more urgency and heeded the advice provided to it by COMTA this might have been possible. Accordingly, since GALEN has failed to establish clear and satisfactory evidence in support of these two fraud claims, the court should find in defendants favor on Count Two of plaintiffs' complaint.

## COUNT THREE : BREACH OF CONTRACT

Plaintiffs offer no argument with respect to Count Three in their respective Trial Memorandums. To the extent they have not abandoned this claim, the court should find in favor of defendants. Plaintiffs have not offered evidence as to a breach of any agreement, and in fact, the evidence demonstrated that GALEN got exactly what it bargained for. There were no promises of accreditation made by COMTA. COMTA provided the services pursuant to the application and policies and procedures: an evaluation of an applicant's program, assistance and advice on how to meet COMTA's standards, and if and only if the standards were met, accreditation. Evidence demonstrated that COMTA did provide advice and assistance to GALEN, which GALEN rejected. COMTA evaluated GALEN's program which demonstrated the numerous deficiencies noted above. COMTA did not deny GALEN on its initial review but offered a six month deferral to allow GALEN time to meet standards. Despite these deficiencies, COMTA remained willing and able to work with GALEN to ensure a successful accreditation. Only after a total refusal by GALEN to participate, did COMTA deny its application. Thereafter, an appeals process was explained and offered to GALEN.

921971.1

Again GALEN chose to not to participate. It was GALEN who breached the agreement by attempting to withdraw from the process and by refusing to reimburse the outstanding expenses owed to COMTA for the site visit. (Plaintiffs' Exhibit 22)


**COUNT FOUR :    FRAUDULENT MISREPRESENTATION**

As noted above, plaintiffs have the burden of establishing the four required elements to be entitled to recover on the Fourth Count alleging fraud.   Such proof must be clear and satisfactory.   Plaintiffs fail to meet this burden. The fraud allegations contained in this count surround the allegations that COMTA misrepresented facts concerning its business organization.  As discussed above, the Court repeatedly found plaintiffs offer of proof with respect to COMTA's business organization to be irrelevant and inadmissible.   As such the record lacks any evidence in support of this claim. Furthermore, LATTANZIO testified that he was not was unaware of the business organization of COMTA at the time he engaged their services.   As such, GALEN could not have possibly relied upon any false statements or misrepresentations in this regard, as none were made. Since none were made, and GALEN admittedly chose COMTA due to their being named in the statute, there was no reliance.   Therefore, elements 1 and 2 as enumerated above were not proved and defendants are entitled to a judgment in their favor.

**COUNT FIVE : TORTUOUS INTERFERENCE WITH A BUSINESS EXPECTANCY**

Neither GALEN nor LATTANZIO address the allegations contained in Count Five of their complaint in their respective trial memorandums.  To the extent that they have

921971.1

not abandoned these claims, the court should find in defendants' favor, as they have failed to establish any evidence in support of these claims.

GALEN alleges in paragraph 48 of their complaint that "The defendant COMTA's on-site team tortuously interfered with GALEN's contractual relations with its students by making statements clearly outside the scope of their investigation that were false and they knew them to be false, to the detriment of plaintiff Galen, to the effect that: "... if Galen Institute fails to get accredited, you [student] cannot get a Connecticut license for massage therapy."  Yet at trial, GALEN offered no evidence whatsoever of any conversations between COMTA team members and students.  The only evidence presented by GALEN that even remotely relates to this claim is the testimony of LATTANZIO, wherein he claimed he was met by several students on the morning of the second day of the on-site visit. (LATTANZIO testimony 5/3/05 5:21:30 p.m.) LATTANZIO testified that these students were concerned how the accreditation process may affect their career plans and licensure. At no time was any evidence offered as to any statements made by COMTA to these students concerning licensure. When asked why the students were concerned on direct testimony, LATTANZIO testified that "I don't know if it was a result of any comments made by team members. . . " (LATTANZIO testimony 5/3/05 5:21:38 p.m.). This despite that in its Trial Preparation Order dated April 9, 2004, GALEN listed as many as eight former students who were allegedly present during the on-site visit who would testify in regards to count five.  None of these individuals were called to offer evidence of the alleged false statements made by COMTA and as such, GALEN cannot establish these statements were ever made, or if made by whom.

921971.1

Furthermore, evidence established the presence of Brenda Lerner and Tim Tynan from the State Department of Higher Education during the first day of the on-site visit. GALEN was only able to offer evidence that students were concerned but by what specifically, and by whose actions, GALEN only offered speculation and not evidence.

Finally, Count Five alleges students either withdrew from GALEN or terminated their plans to enroll as a result of the alleged statements. No students former or prospective testified to this fact. GALEN attempted to offer evidence of students who expressed interest but did not attend. GALEN failed to introduce admissible evidence in this regard. In order for the court to find that this was due to alleged statements it would have to engage in speculation. In addition, GALEN and LATTANZIO make the very same claims of loss of students, lower enrollment rates and lost growth due the actions of Brenda Lerner of DPH in placing GALEN on probation in April 2002 and requiring said probationary certificate to be conspicuously displayed. GALEN also claims in that same lawsuit that statements published by Jonas Zdanys of DPH caused the loss of students and lower enrollment rates. If the Court were to find a loss of students, it would again have to speculate as to the cause, COMTA actions or DPH actions or any other reasons of which there are too many to list. Therefore, in light of plaintiffs' failure to offer evidence in support of any false statements made by COMTA to students, nor any economic harm as a result of such statements, defendants are entitled to a verdict in their favor with regards to Count Five of plaintiffs' complaint.

## COUNT SIX : TROVER

Neither GALEN nor LATTANZIO address the allegations contained in Count Six of their complaint in their respective Trial Memorandums. To the extent that they have

921971.1

not abandoned this claims, the court should find in defendants favor, as they have again failed to establish any evidence in support of this claim. Plaintiffs allege that COMTA converted certain trade secrets and or proprietary information that was contained in the SSR and or copied on the site visit. However, plaintiffs again fail to offer any evidence whatsoever in support of this claim.

Before addressing the factual issues raised by plaintiff, the defendants wish to request that the court take judicial notice of US Department of Education regulations. More particularly, section 602.15(b) (1) which reads in pertinent part:

> (b) The agency maintains complete and accurate records of –
>
> (1) Its last two full accreditation or pre-accreditation reviews of each institution or program, including on-site evaluation team reports, the institution's or program's responses to on-site reports, periodic review reports, any reports of special reviews conducted by the agency between regular reviews, and a copy of the institution's most recent self study report; ...[7]

By virtue of this regulation, COMTA was required to maintain the records and materials which are at issue in plaintiff's sixth count. In order for COMTA to be in compliance with federal regulations and maintain its status as a federally recognized accrediting agency, COMTA is required to keep the very same materials that GALEN seeks the return of. Judgment in favor of COMTA on count six is thereby appropriate with the need to examine the factual issues raised at trial.

With respect to factual considerations raised by plaintiff, it is again apparent that plaintiffs failed to meet their burden. Courts have identified six elements that are to be

---

[7] Plaintiff's argue that testimony of Goss that requires COMTA to maintain records for seven years was not supported by fact. This does support Goss' testimony as the initial accrediting period is two years and subsequently renewals are five years.

921971.1

used in determining whether certain information is properly identified as a "trade secret"

These six elements are as follows:

    (1)  the extent to which the information is known outside the business;
    (2)  the extent to which it is known by employees and others involved in the business;
    (3)  the extent of measures taken by the employer to guard the secrecy of the information;
    (4)  the value of the information to the employer and his competitors;
    (5)  the amount of effort or money expended by the employer in developing the information; and
    (6)  the ease or difficulty with which the information could be properly acquired or duplicated by others.

Nationwide Mut. Ins. Co. v. Stenger, 695 F. Supp. 688, 691 (D. Conn. 1988.)

It is clear from the evidence offered by plaintiffs' that the SSR and materials obtained by COMTA during the site visit do not constitute trade secrets as defined by the courts of this state.

It should first be noted that plaintiff never identified with specificity exactly what constituted his trade secrets.  LATTANZIO's sole testimony on this issue identified in general terms that the alleged trade secrets consisted of course syllabi course outlines and other class materials.  He further testified that these were materials developed by GALEN and as such were the proprietary property of GALEN.  However, LATTANZIO's testimony is inconsistent with GALEN's own response to the onsite visit submitted to COMTA in May 2002. GALEN responded to deficiencies noted in the onsite report concerning standard 3.2 relating to course outlines, syllabi and lesson plans etc. GALEN's response indicated that "The concepts employed are time tested and have been used since 1942 far before COMTA created its standards. (Plaintiffs' Exhibit 19, page 2).  Clearly, GALEN cannot have it both ways; either the education materials were time tested and used for 60 years or they were developed by GALEN and not utilized by

55

other institutions. As such GALEN has failed to demonstrate that the first two elements noted above have been met.

Likewise plaintiffs failed to offer an evidence whatsoever with respect to the third element noted above. LATTANZIO never testified to the methods or processes GALEN utilized to maintain secrecy of any information. There was no evidence that confidentiality agreements were required of GALEN employees, nor students for that matter. The only evidence offered in regards to employee confidentiality demonstrates that GALEN once before alleged the conversion of trade secrets. LATTANZIO conceded on cross examination that GALEN brought a lawsuit against a former employee named Navarro alleging he too, converted trade secrets. Aside from bringing legal action for alleged conversion of trade secrets after the fact, GALEN provided no evidence of any steps whatsoever undertaken to ensure that the alleged trade secrets were maintained as such.

Plaintiffs also failed to offer any evidence in support of either the fourth or fifth elements for a trade secret. At no time did GALEN introduce evidence as to the actual cost of developing the alleged trade secrets nor did GALEN offer evidence of the value of this information to either GALEN or its competitors. As such even if the court finds these materials were in fact trade secrets, the court will be left to speculate as to the damages since there has been no evidence on this issue. Any award of damages with respect to this count would be based upon speculation and is therefore inappropriate.

The sixth and final element has also not been met by GALEN. If the materials which constitute the alleged trade secrets consists of, in part, course syllabi, and or outlines, then this material would have necessarily been distributed by GALEN to its

56

students. The material can only be considered a secret if it is fact kept secret. Students may have copied, destroyed, passed the materials on to others or saved them for future reference.   Students may go on to become teachers themselves. A fundamental characteristic of the educational process is that students eventually become the teachers. Those that do, necessarily and properly draw upon their experiences and the lessons they learned. The process therefore is an evolving one, wherein earlier lessons are expanded upon by subsequent generations of teachers to advance the knowledge of a particular area of studies.   As such, anyone willing to pay the tuition will have access to the syllabi and lesson plans and possess the academic freedom to utilize them in their future occupational or educational endeavors.  GALEN failed to introduce any evidence in support of the sixth element, and the Court must therefore find, that the alleged trade secrets were not secret at all. Any one willing to pay tuition will received the secrets and thus COMTA and OSTENDORF are entitled to judgments in their favor with respect to Count Six.

## COUNT SEVEN :  VIOLATIONS OF CUTPA

Plaintiffs correctly state the law which applies to CUTPA claims and defendants will not restate same here. However, plaintiffs misstate the facts and incorrectly apply them to the statute.   In order to be liable under CUTPA there first must be practices. Plaintiffs do not offer evidence of more than one act committed by COMTA.[8]

Plaintiffs further fail to establish that the conduct of COMTA was immoral, unethical, oppressive or unscrupulous.  Evidence demonstrated that COMTA was, at all

---

[8] In GALEN's Trial Memorandum, it alleges COMTA accredited CCMT. There was no evidence presented at trial regarding this claim nor was their any evidence as to when this accreditation took place.  Furthermore, plaintiffs offered no evidence as to the circumstances of this accreditation and as such cannot establish this constituted necessary practices as required by the Connecticut Unfair Trade Practices Act.

921971.1

times, professional and diligent in executing their duties and responsibilities.  Plaintiffs again cite allegations as to COMTA's corporate structure or lack thereof, in support of this claim. As noted, plaintiffs' offered no admissible evidence in support of is contention that COMTA engaged in an unethical or unscrupulous manner.  Defendants will not repeat those arguments here.  This argument again fails as, noted above, no admissible evidence was offered to support this contention. Furthermore, GALEN did achieve accreditation from COMMTA, who was not registered or authorized to business in Connecticut.   As such, GALEN and LATTANZIO fail to establish the necessary elements to support its claim with respect to Count Seven.   Judgment should be rendered in favor of defendants.

## III.    <u>CONCLUSION</u>

The defendants, in view of the foregoing discussion of applicable facts, and analysis of the applicable legal principles, submit that plaintiffs' have failed to prove any of its claims.   Furthermore, the evidence demonstrates COMTA acted at all times professionally, diligently, and at all times consistent with its own policies, United States Regulations and all applicable state and federal laws. The Court, should therefore, find judgment in favor of defendants, COMTA and OSTENDORF, and dismiss plaintiffs'

921971.1

complaint in its entirety and award defendants costs and any other relief as the court

deems appropriate.

THE DEFENDANTS,
COMTA, COMMISSION ON MASSAGE
THERAPY ACCREDITATION AND
CAROLE OSTENDORF,
INDIVIDUALLY AND AS EXECUTIVE
DIRECTOR OF COMTA

By _____
Douglas M. Connors, Esq. (CT 18324)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
One Stamford Plaza
263 Tresser Boulevard, 9th Floor
Stamford, CT  06901
Phone:  (203) 564 1900
Fax:  (203) 564-1742
File No.:  08741.00016

59

## **CERTIFICATE OF SERVICE**

This is to certify that on this 27th day of June, 2005, a copy of the foregoing has been mailed, postage prepaid, to the following:

Thomas A. Amato
357 East Center Street
Manchester, CT  06040

Jim Lattanzio
Galen Institute, LLC
1025 Silas Deane Highway
Wethersfield, CT  06109

Clerk's Office
United States District Court
District of Connecticut
141 Church Street
New Haven, CT  06510

Douglas M. Connors

921971.1

60