UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GALEN INSTITUTE, L.L.C., et al       :

    v.                                                      :         No. 3:02CV01232(PCD)

COMTA et al                                    :

MEMORANDUM OF DECISION

Plaintiff Galen Institute operates a medical massage training program for which it is authorized by Connecticut. Plaintiff James Lattanzio is described as sole owner and Executive Director of Galen. Defendant, Commission on Massage Therapy Accreditation (COMTA) is an organization which accredits programs such as Galen's, when they meet standards promulgated by COMTA. It was first Federally recognized as such in July, 2002. Defendant Ostendorf was COMTA's executive director.

Galen initiated the process of seeking COMTA accreditation in 1999, over other sources of accreditation, so that its graduates would qualify for Connecticut licensure as having graduated from one of several schools including a school "accredited by the Commission on Massage Therapy Accreditation." Conn. Gen.Stat. § 20-206b(a)(1)(B). See § 20-206b(c). It alleges it devoted time and finances to the process (outlined in COMTA's policies provided to Galen-Ex. 2) but was not successful in obtaining accreditation. Lattanzio, for Galen, attended a pre-application workshop, paid fees, prepared, gathered and submitted paperwork, arranged persons to provide information and replaced personnel to carry on its program while others complied with the application process and hosted a site visit by defendant's inspection team. Galen was later accredited by another agency.

Galen claims it was fraudulently induced into the application process at considerable cost only to have defendant fail to consider the application in accordance with its own standards and procedures and deny certification. Secondly, it asserts common law negligence in COMTA's processing and rejecting Galen's application. It claims the process and rejection of Galen's application were arbitrary, capricious and violative of its policies and procedures and thus wrongfully, under various legal theories, failed and refused to certify Galen's accreditation. It claims COMTA violated the Connecticut Unfair Trade Practices Act (CUTPA).

To the extent Galen alleged interference with its business, it has neither briefed nor offered evidence to support the claim.  If not abandoned, it was not proved.

**FACTS:**

The following factual recitation constitute the court's findings after a court trial. To simplify the matter, it is noted that although James Lattanzio is a named plaintiff, having initiated the complaint for himself and for Galen, he has not demonstrated any personal relationship with COMTA which gives rise to a cause of action in his own right.  He dealt extensively with COMTA, but always in a representative basis for and on behalf of Galen which retained its own counsel, Mr. Amato, who thereafter represented Galen. His post-trial memorandum largely discusses the claims of Galen. He does refer to a breach of confidentiality and damage to his reputation and cites COMTA disclosure of Galen documents and COMTA's on-site report which was derived from its on-site visit at Galen, but no allegation of defamation is found in the Complaint.  He also refers to various sources of claimed standards by which COMTA was allegedly obliged to conduct its processing of the Galen application. None of what he has argued,

nor any of the evidence, nor any of the claims in the complaint identify a legally cognizable breach of any duty owed to Mr. Lattanzio. Accordingly, judgment will enter for defendants as to the claim of James Lattanzio.

Galen commenced offering instruction in medical massage therapy in 1999. As it was not accredited it operated on the basis of an authorization pursuant to Conn.Gen.Stat. § 10a-22b. As graduates' licensure requires graduation from an accredited school, or one accredited within 33 months of commencing to offer the instruction, Id. § 20-206(c), Galen initiated an accreditation process with COMTA as it was identified in the Connecticut statute. Galen was eligible to apply as of September 2000. Mr. Lattanzio attended a workshop on the process in March, 2001, skipping a January 2001 workshop of which he was aware. He was supplied with copies of COMTA's policies and procedures. Ms. Ostendorf was made aware of the 33 month time. Galen prepared and submitted to COMTA self-study reports (SSRs) which purported, in compliance with the application procedures, to establish Galen's meeting the standards for accreditation. The application was filed in August 2001, five months after the March 2001 workshop. The first of required SSRs followed on or about October 1, 2001 when 13 of the 33 months had passed. At the instance of COMTA, revised SSRs providing information supplements were filed in December 2001 and January 2002 when, per COMTA's standards, Galen was ready for an onsite visit which was set for March 25, 2002.

Ostendorf formed the visit team, of which she was the leader. Three others made up the team, Brenda Griffin as the education specialist, Michelle Minch a practitioner and Dee Meus as the management/financial specialist. COMTA's policies, Ex. 2, described the qualifications of each specialist required for the team. These included experience in education and various aspects

of operation of an education program and described functional responsibility of the team members, i.e. what to look for and how to go about finding it. Each of the three contributed, edited or authored segments of the report that pertained to the standards for which they, as specialists, were responsible. Ostendorf was responsible for the final report and typed portions of it. Ex. 18. Most of the grades on particular standards were 1 or 2, reflecting failure to meet standards to a major or minor extent. The deficiencies allegedly found were specified and Galen was afforded the opportunity to correct them before a final decision as to the grant or denial of accreditation was made by COMTA's Board.

     Mr. Lattanzio, for Galen, responded to the draft report, Ex. 19. He decided to withdraw the application and sought return of the fee advanced with the application. Exs. 20, 21. He stated that Galen was no longer required by Connecticut to be accredited as graduates who passed the national examination were eligible to be licensed in Connecticut. Pursuit of COMTA accreditation was thus no longer necessary to meet the need which prompted Galen's application.

     He asserted that the school mission was published and known to staff and students. He noted the success rate of graduates and a curriculum which was the first of its kind in Connecticut. He claimed that graduates being certified after passing an examination refuted the deficiencies found as to the curriculum, the courses included, the availability of on hands experience, supervised exposure to medical situations, unsupervised hands on practice and the proper integration and succession of courses. The reported deficiencies were based on student and faculty interviews, lack of provided lesson plans and reviews of provided course materials. The failure to provide the advertised/required course hours, was based on missed time per attendance records, graduate files and student interviews. He claimed they were met per the

stated mission of the school, approval of Connecticut Department of Higher Education, DHE, evidence of curriculum and graduate certification. Some course outlines and syllabi existed, but not for all courses.  Reported failure to and lack of documentation of review and revision of curriculum, lack of student, faculty, graduate and graduate employers' input into revision and lack of lesson plans were answered by citing DHE review and program approval and Galen's being first to provide the course. Deficiencies in class time, based on classroom observation, student and faculty interviews and graduate file reviews, resulting from crediting days absent and holidays and lack of supervision of out of class projects, was answered by noting a clock hour to be the basis for classroom credit and graduate success in obtaining certification.

Questions concerning the quality of instruction were not answered. Questions of instructor performance, orientation and ongoing evaluation/education/in service training, program assessment, admission recruiting and standards, advertising, catalogue currency, student records including performance, and graduate job availability,  from faculty and student interviews, files and observation, were not denied in some cases but were rejected on the basis of graduate success in certification. Some deficiencies were dismissed based on DHE approval and state standards, and not by disproving the facts on which they were based.  The response to questions of management organization and performance cites DHE approval, student "happiness" and graduate certification success. The report notes a discrepancy between Galen's claim of no significant complaints and DHE reports to the contrary.  DPH was a source of confirmation of some deficiencies.

      When Galen sought to withdraw its application and retrieve its fee advances, at first COMTA declined to comply, but later offered to do so.  Suit was filed instead. COMTA also

held out for six months the prospect of Galen qualifying for accreditation, with some additional work without an additional onsite visit. Ex. 23. It noted the lack of response to many questions flagged in the onsite report, which were repeated, and an appeal process was noted.. Id. Galen did not opt to do so and accreditation was denied.

Galen's complaints start with COMTA's failure to complete the process within the 33 months to which Galen was subject by Connecticut law. In reality that was surmountable had Galen applied earlier, been better prepared to meet COMTA's standards at the onsite inspection or when afforded the opportunity to meet the asserted deficiencies. It could also have availed itself of the appeal process if it was so sure that, notwithstanding the list of deficiencies, it met COMTA's standards.

Galen faults COMTA for refusing to comport its standards to Connecticut's DHE with particular regard to Galen's financial status and records. The last audited report provided was for the third quarter of 2001 (site visit was on March 25, 2002). No budget for 2002 was provided.

**DISCUSSION:**

    **1.**    **Negligence**

It is not clear what standard of conduct was violated by COMTA. It undertook to consider Galen's application for accreditation in relation to its published standards. While plaintiff asserts it met those standards, it has not shown that defendant's list of deficiencies, which were provided to Galen, were unfounded nor the result of negligence either in the process from which the deficiencies derived, nor in the assessment of the onsite team's application of COMTA's standards.

### 2. Fraud

Fraud can be ruled out as unproven on the same basis. Further, no material deviation from the processes or standards as published by COMTA has been proven as is plaintiff's burden. There has also been no proof of fraud in COMTA's inducing Galen to apply for and undertake the process of complying with COMTA's standards. That no others had been denied accreditation was no guarantee to Galen. If credited, such a claim would render the application process nugatory. There was no evidence that a decision date was guaranteed. Thus, fraud has not been proven as a basis for a recovery by Galen.

### 3. Breach of Contract

COMTA certainly undertook to consider Galen's accreditation to be measured against standards COMTA established. COMTA's detailed list of deficiencies attributed to Galen's program, in its formulation, its ongoing evaluation and its execution reflect COMTA's discharge of its undertaking. Galen's challenge to the deficiencies on which it was faulted and found to be short of entitlement to accreditation, was unconvincing. Thus Galen cannot be found to have met its burden of proving a failure by COMTA in its performance of the undertaking which it contracted. As not argued as such in its brief, the claim can be regarded as abandoned.

### 4. Galen's claims of COMTA's Delay

Galen faults the scheduling of the onsite visit on March 25, 2002. That date was only two months after Galen's last SSR was submitted, the same time Galen delayed in attending a workshop. With the time required to recruit and train the inspection team, a two-month lag was not shown to be arbitrary nor unreasonable. That it took place but two weeks before COMTA's Commissioners' meeting would, as Galen claims, permit a minimal time to rectify deficiencies.

There was no evidence that consideration of the application, if filed earlier, could not be scheduled as soon as the deficiencies were corrected. However significant corrective action was required for many of the deficiencies, the responsibility for which lay with Galen, not COMTA.

     5.    **Failure to Comport to State Law**

Galen notes particularly the financial standards deficiencies as a failure by COMTA to accept DHE requirements. The latter were not the subject of substantive evidence but Galen relied on DHE's approval. The deficiencies were not reflective of failure to meet financial principles but rather reflected, largely, a failure to produce current, up-to-date records. The standards used clearly were intended to verify financial stability and sound planning and performance in regard to fiscal considerations. The cited absence of requested records and reports legitimately precluded finding such to be the case. Galen's failure to provide information about pending lawsuits against it precluded assessment of that risk.

     6.    **Inspection Team Qualification**

Galen's claim that the inspection team was unqualified fails for two reasons. Ms. Meus was faulted for a lack of formal financial education or training. She had 3 years of college in the field. She was shown to have had experience managing a therapy school which is found to establish her credibility to make the observations she claimed to have made. Further the deficiencies in the area of finances and management were objectively factual and did not rely on expert judgment. Finding insufficient income to complete student induction is a simple matter of adding up income and comparing it to the costs of the instruction. In addition, the team leader supervised and reviewed the work and findings of the team. She had a B.S., and MBA, an MS

and a PhD and was experienced in evaluating programs against COMTA's accreditation standards.

Ms. Griffith, the education specialist, claimed by Galen to lack formal education in the areas she was assigned also had sufficient practical teaching experience (17 years) and four prior site visits to make findings in those areas. That she lacked some elements of qualification would be relevant to the weight of her testimony. That would not preclude her observation of the factual deficiencies she claimed to have found, i.e. insufficient door clearance for a wheelchair or the number of massage tables.

Ms. Minch was found on the same analysis to be credible (10 years in practice). Characterizing her and Ms. Griffith and Ms. Meus as a "menagerie of weak, untrained amateurs" fails to put forth a credible analysis of the evidence that supports plaintiff's burden of proof.

**7.      Failure to Assist Galen**

This argument fails to confront the question of whether Galen met the COMTA standards as it claims, and thus was wrongly denied accreditation. It seeks to put the blame on COMTA for Galen's deficiencies. It argues that COMTA's lack of assistance and recommendations entitles Galen to accreditation, seemingly suggesting it would thereby have achieved compliance with COMTA's standards. In a convoluted shifting of the onus of meeting a standard, Galen would hold COMTA responsible for Galen's failure to do so. The argument lacks merit. Further, the evidence contradicted Galen's claim COMTA provided guidance in the request for supplemental SSR in October and December 2001 and in the list of deficiencies in the inspection report which Galen failed if not refused to correct. See Ex. 23.

9

8.  **Conflict of Interest**

Galen's recitation of a claimed conflict of interest is a petition by Linda Derick as a former COMTA Commissioner to DPH that was "inimical" to Galen is irrelevant to any aspect of Galen's claims in this case. So also the assertion that conduct of Stephen Kitts gives rise to an inference of "inappropriate" communication adverse to Galen lacks any semblance of legitimacy.

9.  **Galen's Failure to Appeal**

This failure and Galen's explanation of its reasons do nothing to further its claims. Availability of an appeal and COMTA's documented encouragement of an effort by Galen to rectify the deficiencies with an opportunity to do so undercuts Galen's claim of an arbitrary denial of accreditation. COMTA deferred a decision on Galen's application to permit that opportunity. Asserting that no appeal from such is a technical nicety that adds nothing to Galen's attempt to prove its claims. See Ex. 32. In any event, Galen did not appeal the final decision denying its application.

10. **Withdrawal of Galen's Application**

Whether Galen should have been permitted to withdraw, as was initially denied but later offered, is irrelevant to Galen's claim that it was arbitrarily denied accreditation.

11. **COMTA's Legal Status**

That COMTA was not registered as a trade name in Connecticut is totally irrelevant to Galen's claim of arbitrary denial of accreditation.

12. **Written Complaints**

That Ms. Ostendorf was concerned about anonymous student complaints cannot be but speculative as a basis for the finding of deficiencies and any support of Galen's burden of proof

of its claims herein.  See Ex. 2.  (To the substance of which Mr. Lattanzio provided no response.) Galen's reliance on a requirement of written complaints is misplaced.  See Ex. 1, p. 17, noting writing required as to accredited programs.

### 13. Confidentiality

Galen's claim of a breach of confidentiality by a premature disclosure of its SSRs and other material to the inspection team before they executed confidentiality agreements and of the inspection report and Galen's response to a DHE employee is not shown to advance its claims and is irrelevant.  Besides, Mr. Lattanzio admitted providing the report to DPH.

### 14. Assessment of Accreditation

Galen claims its application was not decided by the full COMTA commission.  Mr. Lattanzio testified to the contrary.  No direct evidence supporting this claim was offered.  The snippets of testimony cited do not support an inference to that effect.  While the team, by its inspection and report of its findings, played a role in the process, the argument that it was flawed is not credited.

### 15. Inspection Inconsistencies

Galen's support of this claim consists of 13 asserted aspects of the inspection report. While some internal contradictions were found, there were sufficient, reportedly documented deficiencies that were not corrected after being flagged to Galen and an opportunity to correct them was afforded, to preclude a finding that COMTA was arbitrary and unjustified in rejecting Galen's application for accreditation.  The contrary inferences claimed by Galen were found to be unwarranted.

COMTA's standards were not challenged as improper measures of qualification for accreditation. The processing of Galen's applications was not shown to fail substantially to follow the standards. Galen failed to prove COMTA's rejection of its application was without foundation in fact and procedurally flawed resulting in an unfair, arbitrary rejection. While fairness is flexible, an agency assessing an application is not obliged, nor permitted to overlook the deficiencies credibly found by COMTA. Galen has not proven that its rejection was not based on the asserted deficiencies, nor that such were not soundly based on an honestly conducted review of the applications, the supporting documents supplied and a fairly conducted inspection's substantiated findings. Accepting Galen's claim that COMTA was obliged to conduct a fair, objective assessment of its application and to decide its merits free of arbitrariness, capriciousness and any abuse of discretion, Galen has simply failed to prove that COMTA's decision was characterized by any such flaws. The evidence credited supported COMTA's fair, objective, reasonable evaluation and basis for Galen's rejection.

That finding is not altered by any or all of procedural flaws cited by Galen which are rejected as unproven, insubstantial and irrelevant. COMTA is not found to have failed to process the application with reasonable care. Galen has not proven any breach of duty by COMTA owed to it and thus it has not been proved to be liable for any damages Galen may have incurred or sustained. This is the finding on review of plaintiff's evidence whether considered as a question of negligence or heightened scrutiny of COMTA's conduct in processing the application. Galen's reliance on graduate success in license exams and DPH authorization does not contradict the specific, credited deficiencies found and relied on by COMTA.

16. **34 CFR Part 602**

Galen rehashes its foregoing discussed claims of COMTA's failures and invokes 34 CFR Part 602. For the reasons discussed above, Galen's proof fails in this respect also.

17. **Trade Secrets**

As misappropriation of trade secrets is not briefed, it is deemed abandoned.

18. **Connecticut Unfair Trade Practices Act (CUTPA)**

Galen's reliance on CUTPA is unavailing. No public policy is shown to have been violated. Nothing attributed to COMTA in its processing Galen's application has been proven to be immoral, unethical, deceptive or unscrupulous. Neither has COMTA been proven to have caused substantial injury to consumers. No practice is shown, but only a single course of action in processing Galen's application. Thus, Galen has not proven unfair conduct on the part of COMTA in any of the respects applied to CUTPA claims individually or in combination. Without agreeing that CUTPA applies to COMTA, Galen has failed to prove the elements of a CUTPA claim. For example, COMTA's non-registration in Connecticut has not been shown to have any significance in determining the propriety of its processing plaintiff's application for accreditation.

19. **Plaintiff's Failure to Amend**

Plaintiff has inserted in its memorandum, p. 56, the suggestion it was entitled to a pro se liberal view. Mr. Lattanzio purported to file a complaint for Galen though he is not an attorney. His claim has been dismissed. Galen has had counsel with ample time to refine the complaint, authority to amend having been granted. No showing has been made to support an inference with prejudice to Galen. The bare assertion of such is rejected.

**CONCLUSION:**

For all the foregoing reasons, judgment shall enter for defendants.

Dated at New Haven, Connecticut, this  25th  day of July, 2005.

                                                              /s/
                                      Hon. Peter C. Dorsey